CHARLES O'LEARY, Appellant, *against* THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

(Decided April 5th, 1880.)

The plaintiff was employed by the Board of Education of the City of New York, as a clerk in the office of the board. In the autumn of 1870, being afflicted with a disease of the eyes, he addressed a letter to the secretary of the board, stating that an operation was about to be performed, and asking leave of absence until such time as his sight should be restored. The committee of the board, to which the matter was referred, granted the application, and directed the secretary to inquire from time to time as to the plaintiff's condition. The plaintiff remained away until February, 1871, and in March of that year underwent a second operation, which necessitated a departure in May, 1871, for Europe. He subsequently brought an action to recover his salary from May 1, 1871, to September 26, 1871, during which period he was absent. *Held*, that the letter, and the action of the committee upon it, merely authorized the absence of the plaintiff for the purpose of undergoing the operation referred to in the letter, and did not authorize his departure abroad without further leave of the board; and a private communication by the plaintiff of his intention to go abroad, to members of the board, and their permission to his departure, in the absence of any authority to grant it, could not avail the plaintiff.

Where a complaint in an action upon a contract alleges full performance, evidence of excuse for non-performance is not admissible.

APPEAL from a judgment of this court entered on the report of a referee.

The action was brought to recover the salary of the plaintiff as a clerk employed by the defendant. The facts are stated in the opinion. Upon trial before a referee he found for the defendant, and judgment for the defendant was entered on his report. From the judgment the plaintiff appealed.

*Daniel R. Lyddy*, for appellant.

*Wm. C. Whitney* and *D. J. Dean*, for respondent.

VAN HOESEN, J.—The plaintiff alleged in his complaint that in June, 1869, he was appointed and employed as a clerk in the office of the Board of Education, at a salary of two thousand dollars a year, and that he entered upon and dis-charged his duties up to September 26, 1871, and he demanded judgment for his salary for the months of May, June, July and August, and for the first twenty-six days of September of the year last named.

The answer alleged that prior to May 1, 1871, the plaintiff forsook his employment, and thereafter performed no service as clerk for the defendant.

The referee—the cause having been referred—found, as matter of fact, that the plaintiff from May 1, 1871, to Sep-tember 26, 1871, was not in the service or employment of the defendant, and judgment was accordingly rendered for the de-fendant.

The evidence showed that the plaintiff, in the autumn of 1870, was afflicted with cataract of the eyes, and that on Octo-ber 28, of that year, he addressed a letter to the secretary of the board, stating that he was about to have an operation per-formed, and asking leave of absence till such time as his sight might be restored.    The secretary brought the letter to the notice of a committee, which granted the plaintiff's application and directed the secretary to inquire, from time to time, as to the plaintiff's condition.    The plaintiff remained away till February, 1871, when he returned to duty; but his cure not having been effected, he went away again in March, and un-derwent a second operation at the hospital, from which he de-parted in May for the purpose of going to Europe, having been advised to try the effect of a sea voyage and of his native air upon his eyes.    It does not appear that on leaving, in the month of March, he obtained any leave of absence, and it is certain that he did not obtain any such leave prior to his de-parture for Europe.

Before he left for Europe he saw Mr. Smyth, the president of the board, and Mr. Sands, a member of the board, and told them that he was advised to go to Ireland.    According to his own account, his object in making this statement was that he

might act with courtesy toward the board, and that they might know where to send his salary. Smyth and Sands told him he could go. Where this conversation between the plaintiff and Mr. Smyth and Mr. Sands occurred, whether he saw them separately or together, whether they were acting officially or were on the street, or transacting their private business, the plaintiff did not inform the court.

It is said that the leave given to the plaintiff to absent himself for the purpose of having the first operation performed was indefinite as to duration, and that it was sufficient to authorize him to depart, without further permission, for Europe, if his eyes made a voyage necessary. Such a construction cannot, in my opinion, be fairly placed upon it. The plaintiff, in his letter, stated that he was afflicted with a cataract, and that he was about to have an operation performed for its removal. This he evidently thought would restore his sight, and therefore he said he asked leave to be absent till his sight was restored. To say that the letter meant, and that the board understood, that the plaintiff might be absent for years if his eyes got no better, is to put a most unreasonable construction upon the document, and to place the board in the position of agreeing to give as a gratuity money raised by taxes for the purpose of education—a proceeding as reprehensible as the creation of a sinecure. The fair construction of the letter, and of the leave, is that the secretary should inquire, from time to time, as to the plaintiff's condition, that a successor might be chosen if the cure of the plaintiff's malady were long delayed, or if his recovery within a short time were improbable. If the employment of the plaintiff were justifiable at all, it was because there were duties to be performed, and it is not to be supposed that the board intended that those duties should be left undone, or be imposed for any considerable length of time upon a clerk who received no compensation for doing them, or that an extra clerk should be hired for an indefinite time to do the work for which the plaintiff was already receiving pay. The letter and the action of the committee upon it simply authorized the absence of the plaintiff for the purpose of undergoing the operation which he referred to; and no authority can be

drawn from them for his departure, without leave of the board, for Europe.    Nor was such authority given by anything said by Sands or by Smyth.    These gentlemen were, it is true, members of the board; but we do not know what power they jointly or separately possessed to excuse clerks from duty whilst absent on voyages to Europe.    It certainly would be a strange state of affairs if one member of the board, without consulting his colleagues, could give a year's leave of absence at one time to every person employed by the Board of Education.    If such power is possessed by the individual members of the board the plaintiff has not shown it.    If Mr. Smyth had, by virtue of his office as president, authority to give the plaintiff an indefinite leave of absence, there must be something in the law, or in the by-laws of the board, to evidence such authority; but no proof of that nature was adduced.    The plaintiff's case is not, therefore, helped by the notice which he privately gave to Sands and Smyth of his contemplated departure for Ireland.    A private communication of a fact to a director, or his knowledge of it from rumor, is clearly no notice to the board, unless he communicate the fact to the board (Angell and Ames on Corp. § 308).    A director must be acting in the very business of the corporation when he acquires knowledge of a fact, in order that his knowledge should be imputed to the corporation (§ 306).    These rules are, it seems to me, quite as applicable to such a body as the Board of Education as to ordinary corporations; and, as I have before said, there is nothing to show that either Sands or Smyth was acting in the business of the board when the plaintiff conversed with them, or that either of them ever told the board that the plaintiff was absent, or that they had approved his going to Europe.    There is nothing in the case, therefore, to show that the Board of Education gave the plaintiff permission to absent himself for a journey to Ireland.

It may be here observed that the plaintiff's complaint does not allege any excuse for the non-performance of his contract, but does, on the other hand, aver full performance.    Evidence of excuse was not, therefore, admissible under the pleadings; but, waiving that as of no importance in this case, I repeat

that here the only excuse for non-performance would be that the plaintiff had a valid leave of absence; and of that there is no satisfactory proof, if, indeed, there be any evidence whatsoever. The case then comes to this: Ought the plaintiff to have recovered when it was proved by himself that his complaint was not true, and that he did not perform the duties of clerk for any part of the period for which he sues for wages? He alleged, and was bound to prove, that he discharged his duties betweeen May 1 and September 26; he proved that he did not do any such thing. Can there be a doubt that he totally failed to prove his case, and that he completely established the defendant's defense?

Again, he proved that his sickness was severe, and of a very protracted character. Illness of such a nature operates as a release of both parties, employer and employed, from the obligations of the contract of hiring (Wood's Master and Servant, p. 233, § 120). The employee can recover, when illness terminates the contract, such wages as he has earned up to the time that his disability prevents his going on with his work. These wages he recovers upon a *quantum meruit,* and not by action upon the contract. This is the law as laid down by the supreme courts of Vermont, Connecticut and Wisconsin, and is in conformity with the doctrine of our own court of appeals in *Wolfe* v. *Howes,* 20 N. Y. 197; *Fenton* v. *Clark,* 11 Vt. 557; *Hubbard* v. *Belden,* 27 Vt. 645; a case in which Ch. J. REDFIELD adopts the law of *Fenton* v. *Clark,* in which he refused at the time to concur; *Ryan* v. *Dayton,* 25 Conn. 188. The contract was abrogated by the plaintiff's severe sickness. The defendant was under no obligation to receive him back if he had offered to return, and the sole claim which the law recognizes on the part of the plaintiff is to recover for the time he actually rendered service to the defendant. For all such services he has been paid in full.

The referee's finding was entirely correct.

In this connection I think it not amiss to call attention to the decision of the court of appeals in *Smith* v. *The Mayor,* (37 N. Y. 520), where Judge HUNT says that the right of an officer to compensation grows out of the rendition of services,

and not out of any contract between him and the appointing power; and that in every case in which an officer has recovered compensation for his services in an action against the city he has proved that he performed the services for which he demanded to be paid.

The judgment appealed from should be affirmed, with costs.

CHARLES P. DALY, Ch. J., and J. F. DALY, J., concurred.

Judgment affirmed, with costs.