(10 Misc. Rep. 148.)

## LAJOS v. EDEN MUSEE AMERICAN CO., Limited.

(Common Pleas of New York City and County, General Term. November 5, 1894.)

1. STATUTE OF FRAUDS—CONTRACT NOT TO BE PERFORMED WITHIN ONE YEAR.
   Negotiations by letter had in November with plaintiff while in a foreign country settled the terms of a contract for services to begin in December, and to continue for one year, but it was expressly provided that no contract should be made until plaintiff's arrival. When plaintiff arrived, he began to render the specified services, and a few days later a verbal contract was made for the services previously negotiated for, for a term of one year. *Held*, that the contract, being made after the services had commenced, was to be performed within one year.

2. CONTRACTS—ACTIONS ON—PLEADING IN PROOF.
    Where a complaint alleges performance by plaintiff, evidence of prevention of performance or of waiver by defendant is not admissible.

    Appeal from city court, general term.

    Action by Munczi Lajos against the Eden Musee American Company, Limited, on a contract of employment.    From a judgment of the city court (27 N. Y. Supp. 1132) affirming a judgment entered on a verdict in favor of plaintiff for $150, defendant appeals.    Reversed.

    Argued before DALY, C. J., and BISCHOFF, J.

    Seligman & Seligman (George W. Seligman, of counsel), for appellant.

    Dittenhoefer, Gerber & James (A. J. Dittenhoefer and I. M. Dittenhoefer, of counsel), for respondent.

    DALY, C. J.    The action was to recover $150 upon a contract for services as musician and leader of orchestra.    The complaint alleged a contract made in November, 1891, for the period of one year, at a weekly salary of $500; that plaintiff entered upon his duties under said agreement, and performed all his obligations towards the defendant, and claimed a balance of $50 a week for the three weeks of the 9th, 16th, and 23d of April, 1892.    The answer denied these allegations, and set up that the contract was not in writing, and was not by its terms to be performed within one year. The defendant's exceptions present for review the questions whether the plaintiff's contract was made with defendant, or with one Biringer; whether it was within the statute of frauds, as alleged in the answer; whether it was performed, so as to entitle plaintiff to recover; and also present certain rulings of the trial court in the admissions of evidence.    The contract was undoubtedly made directly with the defendant, through its president, Mr. Hellman.    Although Mr. Biringer negotiated with plaintiff by means of cable dispatches and letters between America and Europe, it was expressly stipulated between them that no contract was to be made until the arrival of the plaintiff in this country; and after that occurred, which was on December 22, 1891, the contract was made directly with Hellman.    Two or three days after his arrival, the plaintiff went to Hellman, and asked for a written contract, and Hellman replied:    "We do not need a written contract.' You will be paid promptly.    My word should be sufficient, and yours is sufficient for me."    There had been, on plaintiff's arrival, a conversation between plaintiff, Hellman, and Biringer, looking to the making of a written contract between Hellman and Biringer, and then a contract between Biringer and the plaintiff, guarantied by Hellman; but this was not carried out, and was merely intended to give Biringer a standing as manager, and to secure him a commission or payment out of the plaintiff's salary.    Biringer, while not an employé of the defendant, "was continually in the Eden Musee.    It was his business.    He had superintendence over the musicians;

made out programmes; received applications for engagements;" and all his negotiations by letter and cable with plaintiff disclosed that he was acting for Hellman, who had originally, as early as June, 1891, in Europe, negotiated with plaintiff for the proposed engagement, and had stipulated for all the material points of the contract, viz. an orchestra of 16 men, to include plaintiff's brother Bela, at $560 a week, with a commission or allowance to Biringer of $50 weekly out of that sum. The first cable from Biringer to the plaintiff in the following October was: "Cable if you can begin December 8th in New York, on terms arranged with Hellman,"—to which plaintiff replied: "Hellman's condition accepted; sixteen, including Bela. Arrange for passage on my account. Advance $300." In the last communication (a letter to plaintiff from Biringer) the latter writes "at the request of Mr. Hellman," and says: "With respect to the contract for a year, Mr. Hellman is of the opinion to make the same first here with me, in order to have no difficulties in the country. I hope that in the meantime the word of Mr. Hellman and that of mine will be sufficient." When plaintiff arrived, no such written contract was made, and the only agreement was, as we have seen, directly between plaintiff and Hellman. There was therefore no question on that point to submit to the jury, and it is not necessary to discuss the correctness of the instruction of the court to the jury upon the submission of that question; nor the ruling excluding Biringer's statement as to the arrangements between him and the Eden Musee. Long after the engagement of plaintiff commenced, and on January 26, 1892, Hellman, as president, made a written contract with Biringer, by which the latter agreed to furnish the plaintiff's orchestra; but this arrangement could in no way affect plaintiff's direct agreement with Hellman. The conversation between Hellman and the plaintiff, at and after his arrival in this country and the commencement of his service, was the only contract between the parties; and, while it was not in writing, it was for services then actually commenced and to be performed within the year, and therefore was not within the statute. The communications, verbal and written, before the plaintiff's arrival in New York, did not constitute a contract, because it was expressly stipulated that no contract was to be made until arrival. Upon the day of arrival, the plaintiff commenced his services at defendant's request, and a few days after, while they continued, the verbal stipulation was entered into with the president. Although there was then no reference to the terms and conditions previously settled by the president in his oral communication with plaintiff at Marienbad, and in the subsequent cables with Biringer, it was manifest that the service then commenced and continued at the president's request was the employment previously negotiated for and settled upon; and that this was so was manifest from the regular payment of the weekly sums stipulated for up to the last three weeks of the engagement. The case is like Blake v. Voight (Com. Pl. N. Y.) 11 N. Y. Supp. 716, where the agreement was not to take effect until a subsequent date,—that of the actual

commencement of the services; and in this case we have what was
wanting in Blake v. Voight,—an express verbal agreement at and
after the time of the actual commencement of the services.

The remaining question is as to performance by plaintiff of his ob-
ligations, so as to entitle him to recover in the action. His orches-
tra was to consist of 16 persons, including his brother Bela. This
person became insubordinate, and was discharged by Biringer, with
defendant's concurrence, for infractions of the rules. In fact, Bir-
inger paid him a large sum to rid the establishment of his presence.
The defendant then deducted from plaintiff's weekly payment $50,
the amount of Bela's salary. It is for these deductions that the
present action is brought. The plaintiff is entitled to his whole
weekly payment, unless he has committed a breach of his con-
tract. Misconduct of one of his employés, for which the latter
has to be discharged, is a constructive breach of the contract; for
it is an implied obligation of a contractor in plaintiff's position that
those under him, and subject to his authority, will conform to the
rules of the establishment into which he has introduced them, and
observe the proprieties essential to the decent conduct of a place
of public resort; and the defendant would have the right to exclude
therefrom any offender. After the discharge of Bela, however, the
defendant would not permit the plaintiff to fill his place with any
other performer, but continued plaintiff under the contract, deduct-
ing from his weekly payments $50, which was the stipulated compen-
sation of Bela. Upon this state of facts, it is not easy to perceive
what plaintiff's grievance is, unless he has suffered some damage
from the discharge of Bela; but if the latter voluntarily left his em-
ploy, upon receipt of a consideration from defendant, there could be
no liability on his part to Bela for wages or otherwise; and, not hav-
ing to pay Bela the $50 per week withheld by defendant, he has
suffered no loss. At all events, there could be no recovery by plain-
tiff upon the cause of action alleged in the complaint, viz. for per-
formance of the contract. He had not performed the contract, be-
cause of Bela's misbehavior and consequent discharge or voluntary
departure; and the averment of the complaint that he had per-
formed all his obligations to defendant was not sustained. That
allegation must be intended as an averment of performance of the
contract; otherwise, it is a mere legal conclusion, and ineffectual
for any purpose as pleading. Under a plea of performance, evidence
of prevention of performance or of waiver is inadmissible. No re-
covery could be had except upon proof of performance, and this
could not be shown. The defendant objected in due time to the ad-
mission of the evidence as irrelevant, and moved to dismiss the com-
plaint for want of proof of performance. The denial of the motion
was error for which a new trial must be granted. O'Leary v. Board,
9 Daly, 161; Elting v. Dayton (Sup.) 17 N. Y. Supp. 849; Morowsky
v. Rohrig, 4 Misc. Rep. 167, 23 N. Y. Supp. 880; Oakley v. Morton, 11
N. Y. 25; Clift v. Rodger, 25 Hun, 39. If plaintiff have a cause of
action for damages, it must be shown under an amendment of the

complaint. Judgment reversed, and new trial granted, with costs to appellant of the appeals and of the former trial to abide the event.