(16 App. Div. 115.)   KRAKAUER et al. v. CHAPMAN.

(Supreme Court, Appellate Division, Second Department.   April 26, 1897.)

GUARANTY—CONSTRUCTION—SPECIAL LETTER OF CREDIT.
   A letter from defendant to plaintiffs stating that one J. "will send you an order for goods he requires, and is authorized to draw on me in your favor for the amount of your bill," is a request that plaintiffs deliver the goods to J., in the nature of a special letter of credit; and defendant's liability for the price of the goods is not affected by the fact that J. did not give plaintiffs a draft on defendant for the entire amount of the bill.
   Goodrich, P. J., and Cullen, J., dissenting.

Appeal from trial term, New York county.
Transferred from First department.
Action by Adolph Krakauer and others against Henry T. Chapman, Jr.   From a judgment entered on a verdict in favor of plaintiffs, rendered by direction of the court, defendant appeals.   Affirmed.
Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Charles C. Levenson, for appellant.
George H. Fletcher, for respondents.

.HATCH, J.   At the time of the sale of the goods which are the subject of this action, the plaintiffs carried on business at El Paso, in the state of Texas.   The defendant resided in the city of New York.   About October 2, 1893, the defendant wrote the plaintiffs, at El Paso, this letter:

"New York, October 2d, 1893.
"Messrs. Krakauer, Zork & Moye, El Paso, Texas—Dear Sirs:   Mr. E. P. Jones, of the Gold Bullion Mining Co., Clifton, Arizona, will send you an order for goods he requires and is authorized to draw on me in your favor for the amount of your bill, at 30 days' sight.        Yours, very truly,
   "[Sgd.]                                   . H. T. Chapman, Jr."

Jones was the manager of the mining company at this time.   In March, 1894, Jones, in pursuance of this authority, ordered goods of the plaintiffs amounting to the sum of $1,074.75.   The plaintiffs did not have all of the goods required to fill the order at the time when the order was placed.   But delivery was then made of goods amounting in value to $900.95, and on March 23, 1894, the order was finally filled, by the delivery of goods amounting in value to $173.80.   On March 24, 1894, Jones drew his draft upon the defendant for the sum of $500, which was accepted and paid, and the plaintiffs credited the defendant with the amount of the same upon the account.   Shortly thereafter, and in the same month, Jones ceased to be manager of the mining company, having been discharged from its employ.   The plaintiffs thereafter, and in May, 1894, saw the defendant in New York, and requested pay for the balance of the bill, informing the defendant at that time that they held him personally responsible for the payment of the balance. Attempt was thereafter made by the plaintiffs to procure payment, and, these attempts meeting with no success, on the 2d day of November, 1895, they drew a draft upon the defendant for the amount

of the balance, and payment thereof was refused.    Thereupon they brought this action.

At the time when the first draft was drawn, the defendant had in his possession funds of the mining company sufficient to pay the full amount of the purchase price of the goods.    When the defendant was notified that payment had not been made for the entire bill of goods purchased, he was without funds of the mining company with which to pay the same, and has not been at any time since in possession of any funds of the company.    His claim now is that he was only liable for the amount of the draft which Jones should draw, and, having paid the one which Jones did draw, he fulfilled the obligation which rested upon him, and became discharged from further liability, as matter of law.    We are therefore called upon to determine the extent of the liability assumed by the defendant, and this involves a construction of the letter under which liability was created.    The letter notifies the plaintiffs that Jones will send an order for goods which he requires, and, in payment for the same, he is authorized to draw at 30 days' sight. This, in legal effect, was a request upon the part of the defendant to deliver to Jones the goods, and created a liability therefor. It possesses all the essential elements of a special letter of credit, and is to be construed in accordance with the law governing such a contract.    Church v. Brown, 21 N. Y. 329; 2 Daniel, Neg. Inst. § 1790.    This being the character of the instrument, its interpretation is not governed by the rule strictissimi juris, but by the rule of construction which holds the party to the full extent of the fair import of his engagement.    Douglass v. Reynolds, 7 Pet. 113.    And, to this end, the words used and the intent of the instrument will be understood in a sense as strong as their meaning will permit. Drummond v. Priestman, 12 Wheat. 515.    In Merle v. Wells, 2 Campb. 413, the words of the guaranty were: "I consider myself bound to you for any debt he [my brother] may contract for his business as a jeweler, not exceeding one hundred pounds, after this date."    Lord Ellenborough held this to be a continuing guaranty, and applicable to debts successively renewed.    To the same effect are the cases of Sansom v. Bell, 2 Campb. 39, and Bastow v. Bennett, 3 Campb. 220.    In the present case the undertaking is not a continuing guaranty, as there are no words of continuing credit, and the authority is limited to a single order for goods.    The cases, however, are illustrative of the sense in which words are construed when found in such a guaranty.    Those cases in which the courts have construed the undertaking as limited to a single transaction are also illustrative of the same rule.    Rogers v. Warner, 8 Johns. 119; Cremer v. Higginson, 1 Mason, 323, Fed. Cas. No. 3,383; Ranger v. Sargent, 36 Tex. 26.    In Scribner v. Rutherford, 65 Iowa, 551, 22 N. W. 670, it was said that: "A letter of credit is, in effect, an absolute undertaking to pay the money advanced upon the face of the instrument."

While the language of the present instrument limits the undertaking to the single order, it is, nevertheless, absolute as to that order, and created an absolute liability for the goods delivered under it, un-

less such liability be in some wise limited by the particular manner in which payment was to be made. As provided, this was to be made by draft drawn by Jones for the amount of the bill at 30 days' sight. There are no words in this clause which expressly limit the authority to draw one draft. The provision is that Jones may draw for the amount of the bill, and the only condition is that such draft must be at 30 days' sight. It would hardly be contended that if Jones had drawn more than one draft at the time he received the goods, or subsequent thereto, the defendant would be discharged from liability upon all the drafts by payment of one, unless such draft represented the entire purchase. There is nothing in the letter which required that the draft should be drawn at the time of the delivery of the goods. In this respect the order was for delivery, and the defendant's liability for the goods attached at the time of delivery. The drawing of the draft was the method of payment, and, as the defendant or Jones absolutely controlled that act, liability could not be defeated by Jones' refusal or neglect to draw it. There was nothing either in the circumstances under which the letter was given, or the relation between the plaintiffs and Jones or with the defendant, that required the delivery of the draft as a condition precedent to the delivery of the goods. No such condition was imposed by the defendant either in his letter or otherwise. Indeed, the relative situation of the parties seems to make it more reasonable to suppose that the delivery of the goods was to precede the delivery of the draft. The plaintiffs carried on business at El Paso. Jones did not reside there, nor were the goods delivered or expected to be delivered at that point. The business of the mining company was at Clifton, Ariz. The goods were expected to be, and were in fact, shipped from El Paso to that place. Jones received them there. The ordinary business transaction under such circumstances would be that the order would be given, the goods shipped, and payment succeed delivery. No liability would exist to pay unless the goods shipped answered the conditions of the order, and Jones would have the right of inspection in order to determine that fact. If the goods fulfilled the terms of the contract, then liability attached to pay therefor. There is nothing in the letter nor was there anything in the condition of the parties which requires the application of any different rule to this transaction. When the goods reached Jones, and were accepted by him, it then became the duty of Jones to draw the draft therefor. The latter drew a draft for $500, and forwarded it to the plaintiffs. What were they to do? Were they called upon to return the draft? If they looked at the defendant's letter of credit, as they were bound to do, they would have found that Jones was authorized to draw for the amount of the bill. But how? Must they assume that he was only authorized to draw one draft? The letter did not so state. Must they return the draft with notice that it was not for the full amount, or could they assume that Jones, either by instruction from the defendant or for his own purposes, chose to pay the plaintiffs by installments for the goods, and thus drew the draft for this amount? In interpreting the contract in this respect, the court is authorized to look at the circumstances surrounding the parties, their situation and relation to each

other, and the purpose and object to be accomplished by it. Bank of Montreal v. Recknagel, 109 N. Y. 482, 17 N. E. 217. By the terms of defendant's engagement, he was only bound to accept a draft or drafts drawn by Jones at 30 days' sight. Such is the letter of the undertaking. But this condition, like its other parts, is to receive a reasonable construction, having regard to the intent of the parties and the circumstances. The same general principles apply as are applicable to other contracts. Bank of Montreal v. Recknagel, supra. They are to be understood and construed in a sense that is fair and reasonable. Gelpcke v. Quentell, 59 Barb. 250. The purpose of this letter was to authorize the plaintiffs to deliver goods to Jones upon the credit of the defendant, and the latter presented a particular method of payment. This condition presupposed that Jones would perform this act when the goods were delivered. If Jones had died before he was able to draw a draft, it would not be contended that the plaintiffs must lose the purchase price of the goods. When Jones left the employment of the company, he was beyond the reach of the plaintiffs, and they were unable to obtain any other draft. They did all that was left for them to do,—notified the defendant, and requested payment of him. It may be conceded that, if Jones had continued to occupy the relation which he occupied when the goods were delivered, the defendant might insist that he was only liable to pay Jones' draft for the goods. But when that became an impossible or an impractical condition, which neither party had the power or opportunity to produce, and defendant was notified of it, we do not think that he could insist upon strict compliance in that respect, and thereby destroy his liability. As the purpose of the instrument was to procure the delivery of the goods, and such purpose was accomplished, liability attached to pay in the manner prescribed if that were practicable and could be accomplished; if not, then to pay in some other manner.

We think it must be held that the defendant contemplated the continued existence of Jones in such capacity as would enable him to draw for the goods, and, as this contingency failed, the particular method of payment failed, and defendant became liable to pay for the goods, and could not thereafter insist that he was only liable to pay upon a draft drawn by Jones. This view seems to find support in the reasoning of the cases. Wolfe v. Howes, 20 N. Y. 197; Dexter v. Norton, 47 N. Y. 62; People v. Board of Police Com'rs, 114 N. Y. 245, 21 N. E. 421; Walker v. Tucker, 70 Ill. 527–543; Baily v. De Crespigny, L. R. 4 Q. B. 180–185. The purpose of this letter was to induce the plaintiffs to deliver the goods upon the defendant's credit. This purpose has been accomplished, and we ought not now to fritter away the substance of the contract, and defeat plaintiffs' right by subtle refinement as to precise and particular procedure in payment. We should rather give effect to the substance of the matter, in the interest of stability and certainty in commercial dealings. The contract being limited to a single transaction, it was incumbent upon the plaintiffs to notify the defendant of the transaction within a reasonable time thereafter. Upon this part of the case the court was authorized to find that the plaintiffs notified the defendant of the entire

transaction in the month of May following. The defendant was sworn, and he did not deny this statement, nor did he claim that he was prejudiced by any failure to notify him earlier. His sole claim was based upon the fact that, when the draft was received which Jones drew, he then had funds of the company to pay the whole bill. The plaintiffs, as already appears, had no control over that act. The contract was not limited to one draft, and we think they were justified in treating that draft as they did treat it, and that the court was authorized to find that notice, within reasonable time, was thereafter given to the defendant of the transaction. These views lead to the conclusion that defendant's liability for the goods attached at the time of their delivery, and that nothing which thereafter transpired had the effect of relieving the defendant from such liability; and, as the drawing of a further draft became impracticable, defendant became obligated to pay for the goods in another way.

The judgment should be affirmed, with costs.

BRADLEY and BARTLETT, JJ., concur.

GOODRICH, P. J. (dissenting). On October 2, 1893, the defendant wrote the plaintiffs the following letter:

"Mr. E. P. Jones, of the Gold Bullion Mining Co., Clifton, Arizona, will send you an order for goods he requires and is authorized to draw on me in your favor for the amount of your bill, at 30 days' sight."

There had been several previous sales of goods by the plaintiffs to the company, payment for which had been made by drafts of the former manager on the defendant. On March 8, 1894, the plaintiffs sold to the company goods amounting to $900.95, and on March 23d another bill of $173.80, amounting in all to $1,074.75. On March 24, 1894, Jones sent to the plaintiffs a draft on the defendant for $500, which the defendant accepted and paid. On May 30, 1895, the plaintiffs wrote the defendant, demanding the payment of the balance, $574.75, with interest, and on November 2, 1895, drew their own draft upon the defendant for that amount, and caused the same to be presented for acceptance. This draft was not paid. The plaintiffs claim that the letter constituted an original undertaking by the defendant to be responsible for goods sold to Jones, and was not a guaranty, and that they had the right not only to collect a part of the amount with Jones' draft for $500, but also to take another draft for the balance, or, in case of the failure of Jones to draw such a draft, to compel the payment of the amount by the defendant upon their own draft, or even without draft. The answer, while admitting the sale of the goods and the amount and value thereof, alleges that the defendant refused to pay the draft, "because the said Gold Bullion Mining Company had no funds to its deposit with the defendant, and for no other reason." It also denies any indebtedness whatever. The defendant claims that the letter limited his obligation to the payment of one bill of goods and one draft, and that draft was to be drawn by Jones alone. The defendant moved for a nonsuit, and the plaintiffs moved for the direction of a verdict, and there was no request on the part of

the defendant to submit to the jury any question of fact. The direction of a verdict was proper, therefore, if there was any evidence to sustain it.

It appears that, shortly after the first draft was drawn by Jones, he was discharged from the employment of the bullion company, which fact the plaintiffs offer as the reason why the second draft was not drawn by him. The defendant testifies that, when the draft of Jones was presented, he had in his hands funds of the company sufficient to pay the full amount of the goods purchased for the bullion company; that, if a draft for the full amount had been presented, it would have been paid; and that no demand was made upon him for the payment of the amount of the second draft until a year after the transaction. There was evidence that one of the reasons for the delay in drawing the second draft was the fact that the plaintiffs had seen the defendant two or three times in the interval; the first time in May, 1894, when they urged him to pay, but were put off with the statement that he would probably have to pay the draft, but desired to secure from the bullion company the amount necessary therefor. We think that the letter in the present action is to be construed in the light of the attendant circumstances. Major Griswold had previously been manager of the company, and had been in the habit of purchasing goods of the plaintiffs, which had been paid for with the draft of the then manager, on the defendant. Adolph Krakauer, one of the plaintiffs, on cross-examination, was asked, "Don't you know that this letter of Mr. Chapman's, dated October 2nd, 1893, was to notify you that Mr. Jones has succeeded Captain Griswold, and that he alone was authorized, and not Captain Griswold, to draw the draft?" and answered, "I admit that." It does not appear that the defendant knew what was the amount of the goods purchased, but he testified that, at the time the first draft was drawn, he had in his hands enough of the funds of the company to pay the whole bill, and that, if the plaintiffs had presented him a draft for the full amount, it would have been paid. He did not know of the full amount till some time afterwards. When asked if he had any reason to suppose that the bill ordered was more than the $500, objection was made, and the answer was excluded.

At common law, in order that the written promise to accept a nonexisting bill should amount to an acceptance, there are two indispensable requisites: First, that the bill be drawn within a reasonable time; and, second, that the promise so describe the bill that there can be no doubt of its application to it. 1 Daniel, Neg. Inst. § 560; Greele v. Parker, 5 Wend. 414; Bank v. Bensley, 2 Fed. 609; Coolidge v. Payson, 2 Wheat. 66. So, by the statute (1 Rev. St. p. 768, § 8) it is provided that "an unconditional promise in writing to accept a bill before it is drawn shall be deemed an acceptance in favor of every person who upon the faith thereof shall have received the bill for a valuable consideration." I have no doubt that the draft was properly identified, but there is a grave question whether it was drawn within a reasonable time, and also whether the drawing of one draft did not exhaust the promise of

the defendant. The authorities recognize very clearly the necessity of compliance by the plaintiff with the terms of the promise, where the case falls within the category of "virtual acceptance," and for the reason that the promisor may know the extent of his liability, and thus protect himself against loss. In Union Bank v. Coster, 3 N. Y. 203, 213, the court recognizes the principle that notice to a guarantor of nonpayment of the bills referred to in the guaranty is necessary where loss is shown to have resulted from the failure of the notice.

We do not consider the letter in this action to be a guaranty, but the reason for the rule requiring notice of nonpayment to a guarantor would seem to have a decided bearing upon the case at bar, as, in any event, the draft referred to in the letter should have been drawn within a reasonable time after the purchase of the goods. There was evidently considerable delay, and such delay has resulted in this controversy. It appeared that the letter upon which the plaintiffs rely was written in October, 1893; that the goods were purchased in March, 1894, when a draft was drawn in pursuance of the letter, which says that Jones was "authorized to draw on me in your favor for the amount of your bill, at 30 days' sight"; that one draft was drawn for $500; and that it was presented to the defendant, and paid, at a time when he had in his hands enough funds of the company to have paid the entire bill; and that he was not then, nor until two months afterwards, notified that the goods ordered exceeded the amount of the draft. It does not appear that he had any of the funds of the company in his hands when the plaintiffs first notified him that there was any part of the bill unpaid. These circumstances, I think, worked an estoppel, as they seem to embrace the elementary definition of estoppel laid down in Trustees v. Smith, 118 N. Y. 634, 641, 23 N. E. 1002, that "where a party, either by his declarations or his conduct, has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission if the consequences would be to work any injury to such third person."

For the reasons thus stated, I think the judgment should be reversed, and a new trial granted.

CULLEN, J. I dissent. If the letter from the defendant to the plaintiffs is to be construed as a general guaranty of payment for any goods that the latter might sell to Jones or to the mining company, then I admit that the defendant was justly held liable; but I think that the letter is not so to be construed. It was a promise to pay for any goods that might be sold only in case Jones should draw a draft upon the defendant for the amount of the sales. In other words, it was a promise to accept a draft or cover a draft thereafter to be made. The difference between the liability of the defendant under a guaranty of payment and under a promise to accept a draft is substantial. It appears that the defendant was the mere banker or depositary of the mining company, not the principal of Jones. He might well be unwilling to assume

any liability the amount of which was not absolutely fixed by a draft drawn by the agent of the company.   He is in no wise responsible for the failure of the plaintiffs to obtain a draft for the amount of the sale.   The plaintiffs could have protected themselves by refusing to deliver the goods until the draft was given them.   Had Jones drawn drafts not corresponding with the terms of the letter, the defendant would not have been obliged to pay them.   I cannot see that he should be liable when no draft was drawn.