NORMAN HUBBARD, Respondent, v. HENRY T. CHAPMAN, JR.,
Appellant.

*Contract of sale providing for a test to be made by a person named — agreement that
the test should be made by another — proof of such agreement by the vendor under a
complaint alleging performance.*

A director of a corporation, by a contract, to which the corporation was not a
party, agreed to pay for a stamping mill to be furnished to the corporation, in
case the mill should prove satisfactory. The contract provided, "It is agreed
that the test of the mill shall be made by E. P. Jones." Jones, who was an
employee of the corporation at the time the contract was made, having been
dismissed from its employ before the test was made, the test was, by agree-
ment between the parties interested in the contract, made by one James Smith
and pronounced satisfactory, but notwithstanding this the director refused to
pay the purchase price.

In an action brought to recover from the director the purchase price of the mill,
*Held*, that the plaintiff was entitled to recover ;

That the agreement that the test should be made by Jones did not impose a duty
upon the vendor, but was a concession on his part to the vendee, upon whom
the burden was imposed of having such test made; that it was not a condition
precedent to be established as a part of his agreement by the vendor, and, hence,
the fact that the plaintiff had alleged performance of the contract did not
preclude him from showing that the vendee, who had undertaken this part of
the contract, had failed in its performance, and that another person had been
substituted for Mr. Jones to make the test.

APPEAL by the defendant, Henry T. Chapman, Jr., from a judg-
ment of the Supreme Court in favor of the plaintiff, entered in the
office of the clerk of the county of Kings on the 8th day of Feb-
ruary, 1898, upon the verdict of a jury rendered by direction of
the court.

The action was brought to recover the price of a stamp mill fur-
nished to the Gold Bullion Mining Company pursuant to a contract
between the defendant and John W. Marshall, the terms of which
are set out in the opinion. The complaint alleged that the plaintiff
built the mill referred to in said agreement, and that, at the time of
making said agreement, John W. Marshall was indebted to the plain-
tiff for the reasonable value of such mill, and that the plaintiff, rely-
ing upon the said agreement, parted with the possession of said mill.
It also alleged that, prior to the commencement of the action, John

W. Marshall assigned to the present plaintiff all his right, title and interest under said agreement.

*Herbert T. Ketcham,* for the appellant.

*Joseph A. Burr,* for the respondent.

WOODWARD, J.:

The plaintiff in this action constructed for one John W. Marshall a mill for crushing ores, called the Marshall Pneumatic Stamping Mill, and in the early winter of 1893 this mill was in the factory of the plaintiff. About the 28th day of February, 1893, the said Marshall entered into an agreement with the defendant in which it was provided that "John W. Marshall agrees to deliver the 'Marshall Pneumatic Stamp Mill,' now at Norman Hubbard's Works, 93 Pearl street, Brooklyn, aside car or steamer F. O. B." and "Henry T. Chapman, Jr., agrees to forward said mill to the Gold Bullion Mines, located near town of Clifton, Arizona, and to erect same thereon as expeditely as possible under supervision of E. P. Jones, all without expense to said Marshall." It was also "agreed and understood that the Gold Bullion Mining Co. are to have the privilege of running this mill thirty days, and same working satisfactorily the said Chapman is to pay Norman Hubbard, of 93 Pearl street, Brooklyn, the sum of twenty-five hundred dollars ($2,500) for this mill; unsatisfactorily, the Mining Company are to box and deliver the mill at the railroad station at Clifton, subject to the order of J. W. Marshall. It is agreed that the test of the mill shall be made by E. P. Jones."

The answer puts most of the allegations of the complaint in issue, but the defendant offered no evidence at the trial, relying upon a question of law. At the close of the plaintiff's case defendant's counsel moved to dismiss the complaint on the ground that "it alleges that a contract under which the defendant bound himself to pay for the mill in the event that it worked satisfactorily under a test to be made by Jones, and that the proof had failed in that respect." Defendant's counsel also asked that a verdict for the defendant be directed upon the same grounds. Both of these motions were denied, and the defendant excepted to the denial of

the first motion. On motion of the plaintiff a verdict for the plaintiff was directed, and from the judgment entered thereon appeal comes to this department.

It was established on the part of the plaintiff that John W. Marshall delivered the mill in question as provided in the contract or memorandum of agreement; that it was shipped to Clifton, Arizona; that it was taken to the mines of the Gold Bullion Mining Company and erected under the supervision of E. P. Jones; that it was operated successfully for a period of thirty days after having been in the possession of the Gold Bullion Mining Company for more than one year, but it was not shown that the test was made by the said E. P. Jones, he having been dismissed from the employ of the company before the test was made, and pursuant to an agreement between the defendant and the plaintiff one James Smith was sent to Arizona and the test was made under his supervision and pronounced satisfactory. This test was made in the summer of 1894, and the mill was retained by the Gold Bullion Mining Company until the summer of 1895, when it was seized and sold by the sheriff to satisfy certain claims of creditors. The defendant now seeks to avoid payment upon the ground that the test was not made under the supervision of Mr. Jones, such test being, as he contends, a condition precedent to the right of the plaintiff to recover.

This question was practically disposed of in the case of *Krakauer* v. *Chapman* (16 App. Div. 115), the defendant being the same as in the case at bar. In that case the defendant had authorized certain parties to ship goods to the Gold Bullion Mining Company assuring them that E. P. Jones (evidently the same party involved in this transaction) was authorized to draw on him at thirty days' sight for the amount of the bill. The parties, who resided in Texas, were not able to fill the order at once, but sent a portion of the goods. Mr. Jones drew a draft upon the defendant at thirty days for $500, which draft was duly paid. In the meantime Mr. Jones left the employ of the Gold Bullion Mining Company, and when the remainder of the goods arrived Mr. Jones had no authority to draw a second draft, or, if he had, he was out of the reach of the plaintiff. Under these circumstances the defendant undertook to avoid payment on the ground that Mr. Jones, in the drawing of the draft for $500, had exhausted the authority, although the letter of

credit assured the parties shipping the goods that Mr. Jones was
authorized " to draw on me for the amount of your bill," and the
bill aggregated something over $1,000. Mr. Justice HATCH, writ-
ing the opinion of the court in that case, said : " The purpose of
this letter was to authorize the plaintiffs to deliver goods to Jones
upon the credit of the defendant, and the latter prescribed a particu-
lar method of payment. This condition presupposed that Jones
would draw the draft when the goods were delivered. If Jones had
died before he was able to draw a draft, it would not be contended
that the plaintiffs must lose the purchase price of the goods. When
Jones left the employment of the company he was beyond the reach
of the plaintiffs and they were unable to obtain any other draft.
They did all that was left for them to do, notified the defendant
and requested payment of him. It may be conceded that if Jones
had continued to occupy the relation which he occupied when the
goods were delivered, the defendant might insist that he was only
liable to pay Jones' draft for the goods. But when that became an
impossible or an impracticable condition, which neither party had
the power or opportunity to produce, and the defendant was notified
of it, we do not think that he could insist upon strict compliance in
that respect and thereby destroy his liability. As the purpose of
the instrument was to procure the delivery of the goods, and such
purpose was accomplished, liability attached to pay in the manner
prescribed if that were practicable and could be accomplished, if not,
then to pay in some other manner. We think it must be held that
the defendant contemplated the continued existence of Jones in such
capacity as would enable him to draw for the goods, and, as this
contingency failed, the particular method of payment failed, and
the defendant became liable to pay for the goods, and could not
thereafter insist that he was only liable to pay upon a draft drawn
by Jones."

The reasoning is equally applicable to the case at bar. The object
of the agreement between the defendant and Marshall was to pro-
cure the mill in question upon the credit of the defendant. Mar-
shall performed his part of the agreement in delivering the mill
at the point of shipment, and the liability of the defendant attached
at the time of shipment. It is true that this liability was contingent
upon the mill passing a satisfactory test, but the defendant having

appropriated the property to the uses of the company in which he was a director, and having elected, with the consent of the plaintiff, to submit the test to another, ne cannot now be heard to deny his liability for the amount of the purchase price. The plaintiff was not responsible for the discharge of Mr. Jones, and the defendant could not, by his own act, defeat the right of the plaintiff to compensation for the value of the property. John W. Marshall, to whose rights the plaintiff succeeds, had performed all of the conditions of his contract. It was the duty of the defendant, after a test had been made, to reship the mill if it was not satisfactory, and, having neglected to comply with this condition of the contract, and the mill having passed out of the control of the plaintiff, it would not be consistent with justice to say that the defendant may be relieved from the obligation of his contract because Mr. Jones did not make the test of the mill.

The clause of the contract relied upon by the defendant is not a condition precedent to the liability of the defendant, but is a mutual agreement between the parties that the test may be made by a certain party. The real question was whether the mill should prove satisfactory; upon this point hinged the ultimate liability of the defendant, and the question of who should make the test was merely an incident. The defendant having elected to retain control of the mill after a test, he cannot now escape the duty which he owes to this plaintiff by urging a lack of specific performance of an incidental clause in the agreement, which he had himself made impossible of performance. No duty rested upon John W. Marshall or this plaintiff. The agreement was that "the Gold Bullion Mining Co. are to have the privilege of running this Mill thirty days, and same working satisfactorily the said Chapman is to pay," etc. It was beyond the control of the plaintiff, and the agreement is to be understood merely as a concession on the part of the plaintiff that the test might be made by Mr. Jones, though the question of what particular individual might make a test which would be satisfactory to the Gold Bullion Mining Company and the defendant was not material to the question of liability.

The particular point urged by the defendant, that the plaintiff having pleaded performance, the admission of evidence, when properly objected to, of a waiver of performance, is inadmissible, would

be controlling, no doubt, if this question was really involved, but it is not. The Code of Civil Procedure (§ 533) provides that "In pleading the performance of a condition precedent in a contract, it is not necessary to state the facts constituting performance; but the party may state, generally, that he, or the person whom he represents, duly performed all the conditions *on his part.* If that allegation is controverted, he must, on the trial, establish performance." The plaintiff did allege performance of all the conditions on his part, and this was put in issue by the answer, and the burden of proving performance was thus placed upon the plaintiff. This did not, however, place the burden upon the plaintiff of showing that the agreements of the defendant had been kept; he had fully met all the requirements of the Code when he had established that he had done and performed all of the conditions on his part. The covenant or agreement in the contract between John W. Marshall and the defendant in reference to Mr. Jones, was the covenant or agreement of the defendant. Mr. Jones was in his employ; the defendant alone was in a position to say that "the test of the Mill shall be made by E. P. Jones," because Mr. Jones was alone subject to his orders, and it cannot be assumed that Mr. Marshall would make this condition for himself, knowing that Mr. Jones was in the control of the defendant. It is evident from the testimony of the plaintiff that this was the understanding of the parties, for he testifies that "He (defendant) wanted to know if we would not allow somebody to go down in Arizona and run the mill. I was with Mr. Chapman. I told him I would not accept anybody as I sent it down at a risk myself, unless it was somebody satisfactory to me who would do justice to the mill." This indicates clearly that the plaintiff had accepted Mr. Jones as a competent person to make the test upon the pledge of the defendant that Mr. Jones should make the test, and it was clearly competent for the plaintiff to introduce evidence of the history of the transaction, showing the relations of the parties. It was not necessary for him to establish that Mr. Jones made the test; this was no part of his agreement. The defendant had undertaken this part of the contract, and the plaintiff had a right to show that he had failed in the performance; that the defendant had put it out of his power to have Mr. Jones make the test, and that another person

had been substituted at the request of the defendant. If Mr. Jones had died before the time arrived for testing the machines, no one would think of asserting that the rights of the plaintiff were affected; and the case is not altered when the defendant has discharged the man whom he has stipulated shall make the test, thus preventing the carrying out of his part of the agreement; and no interest of the defendant is sacrificed by the introduction of the testimony in reference to the failure on the part of the defendant to carry out his contract with the plaintiff. The objection is based upon the assumption that the test by Mr. Jones is a condition precedent, and that this is one of the covenants of the plaintiff. As we have seen, this is a mistaken construction of the agreement, and objections based upon a false assumption cannot avail the defendant on appeal. The evidence shows that the plaintiff had performed all of the conditions on his part; that the defendant had not only gained possession of his property without compensation, but had put himself in a situation where he could not comply with the conditions of his contract. There was no evidence offered to controvert the case thus made by the plaintiff, and the question presented is purely one of law, in which the contention of the defendant cannot be sustained.

The cases relied upon by the defendant are not in point, for they deal with an entirely different state of facts, where the plaintiff has, in fact, failed to perform his part of the contract. In the case of *La Chicotte* v. *Richmond R. & El. Co.* (15 App. Div. 380, 384) the court say : " The complaint alleged performance of the contract, and over the defendant's objection plaintiff was allowed to prove, not performance, but excuses for not performing the work in accordance with the contract. This question has been many times before the court, and the authorities all hold that it is an elementary rule of pleading that when the plaintiff alleges performance of a contract he must prove performance. He cannot excuse non-performance and recover, because a strict compliance with the obligations of the contract has been either waived or prevented by the defendant." This was a case where the plaintiff had agreed to do a particular piece of work within a given time, and it was held error to permit evidence tending to show that the delay was owing to the lack of diligence on the part of the defendant in getting ready for the work. It is entirely a different case from the one at bar, where the plaintiff

has performed all that he undertook to perform. In the case of *Lajos* v. *Eden Musee Americain Co.* (10 Misc. Rep. 148) the plaintiff entered into a contract to bring an orchestra to perform in the defendant's place of amusement at $500 per week, including the services of the plaintiff's brother, who was to have $50 per week. The management, for good and sufficient reasons, dismissed the brother, and deducted the amount of his salary from the weekly allowance. Plaintiff sued for the amount of the deduction, alleging performance of the contract. The court say : " That allegation must be intended as an averment of performance of the contract; otherwise it is a mere legal conclusion, and ineffectual for any purpose as pleading. Under a plea of performance evidence of prevention of performance or of waiver is inadmissible. No recovery could be had except upon proof of performance, and this could not be shown. The defendant objected in due time to the admission of the evidence as irrelevant, and moved to dismiss the complaint for want of proof of performance." This is clearly not in point, for here the plaintiff, alleging performance, was seeking to introduce evidence to furnish an excuse for not performing, but no such condition is presented in the case at bar ; for the plaintiff not only alleges performance of all the conditions imposed upon him, but proves such performance. *Elting* v. *Dayton* (43 N. Y. St. Repr. 363) is of the same tenor, as is also the case of *Morowsky* v. *Rohrig* (4 Misc. Rep. 167). The same is true of *Oakley* v. *Morton* (11 N. Y. 25).

" It is essential to the legal statement of such a cause of action," say the court in the case of *Bogardus* v. *New York Life Ins. Co.* (101 N. Y. 328, 334), " that it should show an existing contract, and the performance by the plaintiff of such conditions precedent as are thereby provided, or a tender of their performance, or some adequate excuse for non-performance. This may be done by a general allegation of performance, but in some form the fact must be alleged, and if controverted, proved on the trial." This is what the plaintiff in the case at bar has done. He has shown an existing contract, and a performance by the plaintiff of such conditions precedent as are thereby provided, and, these matters having been put in issue, he has established, by uncontroverted evidence, that he has performed all of the conditions imposed upon him by the contract.

The covenant or agreement that the test should be made by Jones being the covenant or agreement of the defendant, the objections raised upon the trial to the admission of evidence in reference to the substitution of Smith were not well taken, and cannot defeat the judgment in favor of the plaintiff. The evidence was competent as showing the complete failure of the defendant to meet the requirements of his contract, and as showing a perfect obligation on his part to the plaintiff.

The judgment appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.