## HUBBARD v. CHAPMAN.

(Supreme Court, Appellate Division, Second Department. November 22, 1898.)

1. SALE—ACCEPTANCE—ACTION FOR PRICE.

Defendant purchased machinery for a corporation, of which he was a director, subject to a test to be made by a certain person in the corporation's employ. This person was dismissed from his employment, and plaintiff and defendant procured another to make the test, which proved satisfactory, and the corporation retained the machinery. *Held*, that defendant, having submitted the test to another, and thereafter permitted the corporation to retain the machinery, was liable for the price.

2. SAME—CONSTRUCTION OF CONTRACT.

A condition in a selling contract, that the article shall be tested by a particular person in purchaser's employ, is not a condition precedent to be performed by the seller, but merely a mutual agreement that such person may make the test.

3. SAME—PLEADING—PERFORMANCE OF CONDITIONS.

A complaint to recover the price of a machine alleged a sale conditioned on its being tested by a particular person in employ of defendant, and performance by the seller of all conditions. *Held*, that under Code Civ. Proc. § 533, requiring plaintiff to establish performance of conditions precedent, where his averment of performance is controverted, the making of such test need not be shown, it being a part of the agreement to be performed by the buyer.

Appeal from trial term.

Action by Norman Hubbard against Henry T. Chapman, Jr. There was a judgment for plaintiff, and defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Herbert T. Ketcham, for appellant.
Joseph A. Burr, for respondent.

WOODWARD, J. The plaintiff in this action constructed for one John W. Marshall a mill for crushing ores, called the "Marshall Pneumatic Stamping Mill," and in the early winter of 1893 this mill was in the factory of the plaintiff. About the 28th day of February, 1893, the said Marshall entered into an agreement with the defendant, in which it was provided that "John W. Marshall agrees to deliver the Marshall pneumatic stamp mill, now at Norman Hubbard's Works, 93 Pearl street, Brooklyn, aside car or steamer, f. o. b.," and "Henry T. Chapman, Jr., agrees to forward said mill to the Gold Bullion Mines, located near town of Clifton, Arizona, and to erect same thereon, as expeditiously as possible, under supervision of E. P. Jones; all without expense to said Marshall." It was also "agreed and understood that the Gold Bullion Mining Company are to have the privilege of running this mill thirty days, and, same working satisfactorily, the said Chapman is to pay Norman Hubbard, of 93 Pearl street, Brooklyn, the sum of twenty-five hundred dollars ($2,500) for this mill; unsatisfactorily, the mining company are to box and deliver the mill at the railroad station at Clifton, subject to the order of J. W. Marshall. It is agreed that the test of the mill shall be made by E. P. Jones." The answer puts most of the allegations of the complaint in issue, but the defendant offered no evidence at the trial, relying upon a

question of law. At the close of the plaintiff's case, defendant's counsel moved to dismiss the complaint on the ground that "it alleges a contract under which the defendant bound himself to pay for the mill in the event that it worked satisfactorily under a test to be made by Jones, and that the proof had failed in that respect." Defendant's counsel also asked that a verdict for the defendant be directed upon the same ground. Both of these motions were denied, and the defendant excepted to the denial of the first motion. On motion of the plaintiff, a verdict for the plaintiff was directed, and from the judgment entered thereon appeal comes to this department.

It was established on the part of the plaintiff that John W. Marshall delivered the mill in question, as provided in the contract or memorandum of agreement; that it was shipped to Clifton, Ariz.; that it was taken to the mines of the Gold Bullion Mining Company, and erected under the supervision of E. P. Jones; that it was operated successfully for a period of 30 days after having been in the possession of the Gold Bullion Mining Company for more than one year, but it was not shown that the test was made by the said E. P. Jones, he having been dismissed from the employ of the company before the test was made; and, pursuant to an agreement between the defendant and the plaintiff, one James Smith was sent to Arizona, and the test was made under his supervision, and pronounced satisfactory. This test was made in the summer of 1894, and the mill was retained by the Gold Bullion Mining Company until the summer of 1895, when it was seized and sold by the sheriff to satisfy certain claims of creditors. The defendant now seeks to avoid payment upon the ground that the test was not made under the supervision of Mr. Jones, such test being, as he contends, a condition precedent to the right of the plaintiff to recover. This question was practically disposed of in the case of Krakauer v. Chapman, 16 App. Div. 115, 45 N. Y. Supp. 127, the defendant being the same as in the case at bar. In that case the defendant had authorized certain parties to ship goods to the Gold Bullion Mining Company, assuring them that E. P. Jones (evidently the same party involved in this transaction) was authorized to draw on him at 30 days' sight for the amount of the bill. The parties, who resided in Texas, were not able to fill the order at once, but sent a portion of the goods. Mr. Jones drew a draft upon the defendant at 30 days for $500, which draft was duly paid. In the meantime Mr. Jones left the employ of the Gold Bullion Mining Company, and when the remainder of the goods arrived Mr. Jones had no authority to draw a second draft, or, if he had, he was out of the reach of the plaintiff. Under these circumstances the defendant undertook to avoid payment on the ground that Mr. Jones, in the drawing of the draft for $500, had exhausted the authority, although the letter of credit assured the parties shipping the goods that Mr. Jones was authorized "to draw on me for the amount of your bill," and the bill aggregated something over $1,000. Mr. Justice Hatch, writing the opinion of the court in that case, said:

"The purpose of this letter was to authorize the plaintiffs to deliver goods to Jones upon the credit of the defendant, and the latter prescribed a particular method of payment. This condition presupposed that Jones would

draw the draft when the goods were delivered. If Jones had died before he was able to draw a draft, it would not be contended that the plaintiffs must lose the purchase price of the goods. When Jones left the employment of the company, he was beyond the reach of the plaintiffs, and they were unable to obtain any other draft. They did all that was left for them to do,—notified the defendant, and requested payment of him. It may be conceded that if Jones had continued to occupy the relation which he occupied when the goods were delivered, the defendant might insist that he was only liable to pay Jones' draft for the goods. But, when that became an impossible or an impracticable condition, which neither party had the power or opportunity to produce, and the defendant was notified of it, we do not think that he could insist upon strict compliance in that respect, and thereby destroy his authority. As the purpose of the instrument was to procure the delivery of the goods, and such purpose was accomplished, liability attached to pay in the manner prescribed, if that were practicable, and could be accomplished; if not, then to pay in some other manner. We think it must be held that the defendant contemplated the continued existence of Jones in such capacity as would enable him to draw for the goods, and, as this contingency failed, the particular method of payment failed, and the defendant became liable to pay for the goods, and could not thereafter insist that he was only liable to pay upon a draft drawn by Jones."

The reasoning is equally applicable to the case at bar. The object of the agreement between the defendant and Marshall was to procure the mill in question upon the credit of the defendant. Marshall performed his part of the agreement in delivering the mill at the point of shipment, and the liability of the defendant attached at the time of shipment. It is true that this liability was contingent upon the mill passing a satisfactory test, but, the defendant having appropriated the property to the uses of the company in which he was a director, and having elected, with the consent of the plaintiff, to submit the test to another, he cannot now be heard to deny his liability for the amount of the purchase price. The plaintiff was not responsible for the discharge of Mr. Jones, and the defendant could not, by his own act, defeat the right of the plaintiff to compensation for the value of the property. John W. Marshall, to whose rights the plaintiff succeeds, had performed all of the conditions of his contract. It was the duty of the defendant, after a test had been made, to reship the mill, if it was not satisfactory; and, having neglected to comply with this condition of the contract, and the mill having passed out of the control of the plaintiff, it would not be consistent with justice to say that he may be relieved from the obligation of his contract because Mr. Jones did not make the test of the mill. The clause of the contract relied upon by the defendant is not a condition precedent to the liability of the defendant, but is a mutual agreement between the parties that the test may be made by a certain party. The real question was whether the mill should prove satisfactory. Upon this point hinged the ultimate liability of the defendant, and the question of who should make the test was merely an incident. The defendant having elected to retain control of the mill after a test, he cannot now escape the duty which he owes to this plaintiff by urging a lack of specific performance of an incidental clause of the agreement, which he had himself made impossible, or at least impracticable, of performance. No duty rested upon John W. Marshall or this plaintiff. The agree-

ment was that "the Gold Bullion Mining Company are to have the privilege of running this mill thirty days, and, same working satisfactorily, the said Chapman is to pay," etc. It was beyond the control of the plaintiff, and the agreement is to be understood merely as a concession on the part of the plaintiff that the test might be made by Mr. Jones, though the question of what particular individual might make a test which would be satisfactory to the Gold Bullion Mining Company and the defendant was not material to the question of liability.

The particular point urged by the defendant that, the plaintiff having pleaded performance, the admission of evidence, when properly objected to, of a waiver of performance, is inadmissible, would be controlling, no doubt, if this question was really involved, but it is not. The Code of Civil Procedure (section 533) provides that:

"In pleading the performance of a condition precedent in a contract, it is not necessary to state the facts constituting performance; but the party may state generally, that he, or the person whom he represents, duly performed all the conditions on his part. If that allegation is controverted, he must, on the trial, establish performance."

The plaintiff did allege performance of all the conditions on his part, and this was put in issue by the answer, and the burden of proving performance was thus placed upon the plaintiff. This did not, however, place the burden upon the plaintiff of showing that the agreements of the defendant had been kept. He had fully met all the requirements of the Code when he had established that he had done and performed all of the conditions on his part. The covenant or agreement in the contract between John W. Marshall and the defendant in reference to Mr. Jones was the covenant or agreement of the defendant. Mr. Jones was in his employ. The defendant alone was in a position to say that "the test shall be made by E. P. Jones," because Mr. Jones was alone subject to his orders, and it cannot be assumed that Mr. Marshall would make this condition for himself, knowing that Mr. Jones was in the control of the defendant. It is evident from the testimony of the plaintiff that this was the understanding of the parties, for he testifies that: "He [defendant] wanted to know if we would not allow somebody to go down in Arizona, and run the mill. I was with Mr. Chapman. I told him I would not accept anybody, as I sent it down at a risk myself, unless it was somebody satisfactory to me, who would do justice to the mill." This indicates clearly that the plaintiff had accepted Mr. Jones as a competent person to make the test upon the pledge of the defendant that Mr. Jones should make the test, and it was clearly competent for the plaintiff to introduce evidence of the history of the transaction, showing the relations of the parties. It was not necessary for him to establish that Mr. Jones made the test. This was no part of his agreement. The defendant had undertaken this part of the contract, and the plaintiff had a right to show that he had failed in the performance, that the defendant had put it out of his power to have Mr. Jones make the test, and that another person had been substituted at the request of the defendant. If Mr. Jones had died before the time arrived for testing the

machine, no one would think of asserting that the rights of the plaintiff were affected; and the case is not altered when the defendant has discharged the man whom he has stipulated shall make the test, thus preventing the carrying out of his part of the agreement; and no interest of the defendant is sacrificed by the introduction of the testimony in reference to the failure on the part of the defendant to carry out his contract with the plaintiff. The objection is based upon the assumption that the test by Mr. Jones is a condition precedent, and that this is one of the covenants of the plaintiff. As we have seen, this is a mistaken construction of the agreement, and objections based upon a false assumption cannot avail the defendant on appeal. The evidence shows that the plaintiff had performed all of the conditions on his part; that the defendant had not only gained possession of his property without compensation, but had put himself in a situation where he could not comply with the conditions of his contract. There was no evidence offered to controvert the case thus made by the plaintiff, and the question presented is purely one of law, in which the contention of the defendant cannot be sustained.

The cases relied upon by the defendant are not in point, for they deal with an entirely different state of facts,—where the plaintiff has, in fact, failed to perform his part of the contract. In the case of La Chicotte v. Electric Co., 15 App. Div. 380, 384, 44 N. Y. Supp. 77, the court say:

"The complaint alleged performance of the contract, and over the defendant's objection, plaintiff was allowed to prove, not performance, but excuses for not performing the work in accordance with the contract. This question has been many times before the court, and the authorities all hold that it is an elementary rule of pleading that, when the plaintiff alleges performance of a contract, he must prove performance. He cannot excuse nonperformance, and recover, because a strict compliance with the obligations of the contract has been either waived or prevented by the defendant."

This was a case where the plaintiff had agreed to do a particular piece of work within a given time, and it was held error to permit evidence tending to show that the delay was owing to the lack of diligence on the part of the defendant in getting ready for the work. It is entirely a different case from the one at bar, where the plaintiff has performed all that he undertook to perform. In the case of Lajos v. Eden Musee American Co., 10 Misc. Rep. 148, 30 N. Y. Supp. 916, the plaintiff entered into a contract to bring an orchestra to perform in the defendant's place of amusement at $500 per week, including the services of the plaintiff's brother, who was to have $50 per week. The management, for good and sufficient reasons, dismissed the brother, and deducted the amount of his salary from the weekly allowance. Plaintiff sued for the amount of the deduction, alleging performance of the contract. The court say:

"That allegation must be intended as an averment of performance of the contract; otherwise it is a mere legal conclusion, and ineffectual for any purpose as pleading. Under a plea of performance evidence of prevention of performance or of waiver is inadmissible. No recovery could be had except upon proof of performance, and this could not be shown. The defendant objected in due time to the admission of the evidence as irrelevant, and moved to dismiss the complaint for want of proof of performance."

This is clearly not in point, for here the plaintiff, alleging per-
formance, was seeking to introduce evidence to furnish an excuse
for not performing, but no such condition is presented in the case
at bar, for the plaintiff not only alleges performance of all the con-
ditions imposed upon him, but proves such performance.   Elting v.
Dayton (Sup.) 17 N. Y. Supp. 849, is of the same tenor, as is also the
case of Morowsky v. Rohrig, 4 Misc. Rep. 167, 23 N. Y. Supp. 880.
The same is true of Oakley v. Morton, 11 N. Y. 25.   "It is essential
to the legal statement of such a cause of action," say the court in
the case of Bogardus v. Insurance Co., 101 N. Y. 328, 334, 4 N. E.
522, "that it should show an existing contract, and the performance
by the plaintiff of such conditions precedent as are thereby provided,
or a tender of their performance, or some adequate excuse for non-
performance.   This may be done by a general allegation of per-
formance, but in some form the fact must be alleged, and, if con-
troverted, proved on the trial."   This is what the plaintiff in the
case at bar has done.   He has shown an existing contract, and a
performance by the plaintiff of such conditions precedent as are
thereby provided, and, these matters having been put in issue, he
has established, by uncontroverted evidence, that he has performed
all of the conditions imposed upon him by the contract.   The cove-
nant or agreement that the test should be made by Jones being the
covenant or agreement of the defendant, the objections raised upon
the trial to the admission of evidence in reference to the substitu-
tion of Smith were not well taken, and cannot defeat the judgment
in favor of the plaintiff.   The evidence was competent as showing
the complete failure of the defendant to meet the requirements of
his contract, and as showing a perfect obligation on his part to
the plaintiff.

The judgment appealed from should be affirmed, with costs.   All
concur.