(15 App. Div. 380.)

### LA CHICOTTE v. RICHMOND RAILWAY & ELECTRIC CO.

(Supreme Court, Appellate Division, First Department. March 5, 1897.)

1. PAROL EVIDENCE—AMBIGUOUS CONTRACT.

    A contract to "construct and complete an iron power house" for an electric railway company is ambiguous as to whether the builder or the railway company is to construct the floor, where it provides generally as to the roof and walls, is open to the interpretation that the railway company is to construct the foundations, and is silent as to floors, and therefore parol evidence is admissible to show the intent of the parties.

2. PLEADING AND PROOF—VARIANCE.

    Evidence excusing plaintiff's failure to commence and complete a building at the time agreed is not admissible under a complaint alleging performance of the agreement.

Appeal from trial term, New York county.

Action by Henry A. La Chicotte against the Richmond Railway & Electric Company. From a judgment entered on a verdict in favor of plaintiff directed by the trial judge, defendant appeals. Reversed.

On the 10th of June, 1893, the plaintiff's assignor, the Wrought-Iron Bridge Company, entered into a contract with the defendant as follows, except the provisions as to time of payment:

"The said Wrought-Iron Bridge Company, for the consideration hereinafter mentioned, agrees to furnish all material except sashes, and to construct and complete an iron power house on Johnson's Island, in the city of Richmond, Va. Said house to be 60 feet wide and 100 feet long, inside dimensions. The roof will be of corrugated iron, laid on 1¼-inch sheathing, secured to iron purlins. These purlins will be supported by iron roof trusses, side of roof having a pitch of one in four. The roof shall be surmounted by a ventilator about 68 feet long; sides of the ventilator being fitted for swing sashes, to be supplied by the party of the second part. The framework and covering of the ventilator will be similar to that of the roof. The sides of the building will be 16 feet high above the foundation, and will be covered with corrugated iron on iron purlins. The sides will

be attached to the iron columns which support the roof, and between each pair provision will ·be made in the iron framework, for a double window, each sash being 3½x6 feet. Near the center of each side and each end shall be a double door arranged on rollers. The party of the first part agrees to ship the material July 25th, 1893, and to prosecute the work of erection with all possible dispatch immediately upon the arrival of said material at Richmond. The entire building shall be constructed in a thorough and workmanlike manner, and the ironwork shall be neatly and thoroughly painted, both before and after erection; and in consideration of the above-mentioned material, to be furnished and work done, the party of the second part hereby agrees, and by these presents binds itself, its successors or assigns, to pay to said party of the first part the sum of thirty-eight hundred dollars ($3,800.00) on completion of said work. And for the performance of each and every article of this agreement, the said party here bind themselves by these presents. And it is further agreed by party of first part to furnish by July 1st a general plan of foundations, showing elevations of pedestals, with distances of sale, center to center, with suggestions as to general dimensions of pedestals."

The plan referred to was furnished in due time, but the bridge company did not ship the material until some time in September, 1893, and the actual construction of the building was begun on November 20, 1893. The bridge company's foreman, French, states that he arrived in Richmond on September 27th, but did not commence building until November 20th, because the piers were not ready to receive it; and that he was never called upon to build either the piers or the floors. The defendant's treasurer, on the contrary, testifies: "I told him it was not our place to put up the foundations, that he had made a contract to put up the building. As a matter of fact, I did put up the foundations at his request." It is admitted that the plaintiff's assignor did not floor the building. During the progress of the erection the defendant objected to and removed certain wooden sheathing furnished by the plaintiff's foreman as being defective, and not a compliance with the contract; and the foreman supplied other sheathing under protest, insisting that the material· first furnished was in accordance with the contract, and that they would look to the defendant for the cost of the exchange. The defendant also objected to the wooden doors furnished by the contractor, claiming that they did not fulfill the contract and that iron doors would be insisted on; French on the other hand contending that iron doors were not called for by the contract and that if they were substituted it would be at an extra cost of $100 to the defendant. Iron doors were subsequently provided, as the plaintiff claims, at the defendant's expense. Delays from time to time occurred in the erection of the building, caused mainly, it would seem, by the slow progress of the defendant in the construction of the foundations, and the house was not finally completed until about January 21, 1894. The contract price not being paid, the plaintiff, as assignee of the contractor, brought this action, the complaint setting up three causes of action, two only of which were pressed upon the trial. The first cause of action set out the contract and alleged "that the said work had been fully and entirely completed as required in said contract"; that defendant failed to perform the contract on its part; and that there was then due and owing on account of said contract $3,800 and interest. The second cause of action was for damages alleged to have been occasioned by the negligence of the defendant, being for increased cost of and delay in the performance of the work, and the furnishing of material additional to that required by the contract, amounting to $663. The answer contains a general denial of the first and second causes of action, and for a separate defense alleges that the building was not constructed·in accordance with the terms and conditions of said contract, nor within the time limited thereby, and claims damages by reason of such failure. Upon the trial the defendant objected to the introduction of evidence upon the part of the plaintiff excusing the delay in commencing the building, on the ground that the complaint alleged· a full performance of the contract, and that it was not permissible, under that allegation, to introduce evidence excusing delay. The court held that this objection was merely technical, and offered to allow the plaintiff to amend. This offer, however, does not seem to have been availed of. The objection was overruled, and the testimony was received. The defendant sought to prove that soon after the completion of the building the roof leaked, injuring and destroying the machinery stationed in the building, and compelling first its repair, and finally its replacement by a new roof. This evidence was excluded,

and the defendant excepted. The defendant offered evidence as to the cost of putting in the floors, which it was admitted was not done by the contractor. This was excluded on the ground that the contract did not call for any floor, and the defendant excepted. A like disposition was made of the question as to the expense to the defendant of building the foundation and piers. When the plaintiff rested, the defendant moved for a nonsuit on the ground that the plaintiff's assignor never completed the contract, in that he failed to put in floors, did not complete the work within the time required, and never furnished the foundations for the building. This motion was denied, and an exception taken. At the close of the case the plaintiff's counsel requested the court to direct a verdict for $3,800, the contract price, $561 damages (being $250 expenses and costs of delay, $211 extra lumber, and $100 extra for four iron doors), and interest. The defendant's counsel requested that the court rule that there was no evidence to justify a finding in favor of the plaintiff for the $211 extra lumber, or for $100 for the iron doors,—the contract calling for doors, not specifying the kind. The court denied the motion, and the defendant excepted. The court directed a verdict in accordance with the plaintiff's motion, and from the judgment entered thereon this appeal is taken.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles E. Patterson, for appellant.
L. Laflin Kellogg, for respondent.

O'BRIEN, J. Without considering the merits of the defendant's counterclaim, or the other points raised, there are two questions which we think fatal to this judgment. The first arises from the variance between the complaint and the proof. The complaint alleged performance of the contract, and over the defendant's objection plaintiff was allowed to prove, not performance, but excuses for not performing the work in accordance with the contract. This question has been many times before the court, and the authorities all hold that it is an elementary rule of pleading that when the plaintiff alleges performance of a contract he must prove performance. He cannot excuse nonperformance, and recover, because a strict compliance with the obligations of the contract has been either waived or prevented by the defendant. Section 533 of the Code of Civil Procedure provides:

"In pleading the performance of a condition precedent in a contract, it is not necessary to state the facts constituting performance; but the party may state generally that he, or the person whom he represents, duly performed all the conditions on his part. If that allegation is controverted, he must on the trial establish performance."

And in Oakley v. Morton, 11 N. Y. 30, the court say:

"The plaintiff was bound to aver and prove a fulfillment of such condition, or some excuse for the nonperformance, and if an excuse was relied upon, he should have averred his readiness to perform and the particular circumstances which constituted such excuse."

To the same effect are Crane v. Knubel, 43 How. Prac. 389; Smith v. Brown, 17 Barb. 431; Bogardus v. Insurance Co., 101 N. Y. 328, 4 N. E. 522. And in the later case of Elting v. Dayton (Sup.) 17 N. Y. Supp. 849, affirmed without opinion, 144 N. Y. 644, 39 N. E. 493, it was held that under a complaint in an action upon a building contract alleging full performance, evidence tending to excuse delays by plaintiff in completing after the time fixed by the contract, for which it

provided a penalty, or to establish a waiver by defendant, is incompetent. It was therein further held that, where objection to such evidence was duly taken, and no amendment asked for, the appellate court cannot consider the pleadings amended to conform to the proof. Here objection was seasonably taken, and the court stated, without any request from the plaintiff, that it would allow an amendment. This, however, does not seem to have been availed of by the plaintiff. But, if we assume that the final statement of the court that it would allow the complaint to be amended effected an amendment of the complaint, then such amendment should only have been allowed upon compliance with the request made by the defendant, which was thus formulated: "Then we want to be served with a copy of the proposed amendments on which they stand." Instead of according this right to the defendant, the court overruled the objection, and admitted the evidence. From this it appeared, not only that the contract was not begun in time, but that it was not finished in time, and testimony was presented which, if plaintiff's understanding of the contract is right, would have excused strict performance. The construction for which the plaintiff contended was that the piers and flooring were to be done by the defendant; and, while we are inclined to agree with the view of the learned trial judge as to the piers, that all the plaintiff was to furnish was "a general plan of foundations, showing elevations of pedestals, with distances of same, and suggestions as to general dimensions of pedestals," another and more difficult question to solve is presented,—as to whose duty it was to furnish the flooring.

This brings us to what we regard as the second fatal objection to the judgment. If the language employed in the contract would justify the view that all the builder was to furnish was an iron superstructure, then the plaintiff's contention could be supported. The provision of the contract, however, is to "furnish all material except sashes, and to construct and complete an iron power house"; and, were it not for the subsequent conditions which qualify this general language, notably as to the foundations, then a reasonable construction would require us to hold that the plaintiff's contract was to build an iron power house, which, among other things, would necessarily include floors. It is not disputed but that floors were a necessary part of the power house. When, however, we seek to ascertain upon whom the duty devolved of furnishing the floors, we are met with two contentions,—the plaintiff insisting that, as there is nothing in the contract referring specifically to floors, all that devolved upon the contractor was to erect an iron superstructure; while the defendant's contention is that the plaintiff was under obligation to erect the entire power house, including the flooring. These diametrically opposite views cannot be resolved by a resort to the language of the contract. This is not only inartificially drawn, but it is vague, indefinite, and uncertain; nor are we aided by specifications of any kind. So that the whole question of just what the builder contracted to do in detail is left in doubt. This doubt and uncertainty the defendant attempted to remove by parol evidence as to what was said by the parties making the contract about the details of construction, particularly as to the flooring; all of which, on the

plaintiff's objection, was excluded. We think this was error, because, without some light borrowed from the contracting parties, it is impossible to clarify the doubt and obscurity which arise from the contract itself. The parol evidence thus offered did not tend to vary the contract or writing, but was directed to explaining it, and to furnishing the data and specifications which the writing itself shows were omitted, and without which it would be impossible to settle the dispute that has arisen between the parties.

We think, therefore, there should be a new trial, and for that purpose that the judgment should be reversed, with costs to the appellant to abide the event. All concur.