(70 App. Div. 142.)

### STERN v. McKEE et al.

(Supreme Court, Appellate Division, First Department. March 14, 1902.)

1. CONTRACT — ACTION FOR BREACH — ALLEGATION OF FULL PERFORMANCE — NECESSITY FOR PROOF.

    Where the complaint in an action for breach of contract, whereby defendants gave plaintiff's assignor the sole option to sell defendants' rights to certain inventions during a stated period, assignor to form a corporation to acquire the rights to the inventions and to procure purchasers for a certain amount of its capital stock, averred full performance by assignor within the time limited, no recovery could be had where a full performance was not established.

2. SAME—EXCUSE FOR NONPERFORMANCE.

    No excuse for nonperformance could be shown, where the complaint did not allege the facts constituting the excuse, and in addition thereto that assignor was at the time ready and had the ability to perform, and would have done so except for the acts of the other parties to the contract.

3. SAME—REFUSAL OF PERFORMANCE—RIGHTS OF PARTIES.

    The refusal of one of the parties to a contract to perform will not entitle the other party to recover damages for the breach, unless he himself is ready, able, and willing to carry out the contract on his part.

4. SUBSCRIPTIONS TO CORPORATE STOCK—ENFORCEMENT.

    Subscriptions to corporate stock, obtained in connection with a prospectus which states that the purpose of the corporation is "to acquire all the patents and rights * * * to metal-turning machines known as the 'H. machines,'" etc., cannot be enforced, where, without the assent of the subscribers, the purpose of the corporation, as stated in its certificate of incorporation, is "to make, contract for the manufacture or purchase of, buy, use, sell, lease, rent, or mortgage all mechanical or other apparatus, machinery, and implements for metal-turning machines, * * * and in general to do a manufacturing business," there being a material departure from the agreement with the subscribers.

Appeal from trial term, New York county.

Action by Max Stern against Joseph J. McKee and Ernest G. Hoffmann. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

This action was brought to recover damages for the alleged breach of a contract between the defendants and the plaintiff's assignor, one Shainwald.

The contract first made was in writing and was as follows: "New York, May 15, 1896. Agreement made and entered into on this date between E. G. Hoffmann, Joseph J. McKee, and Ralph L. Shainwald. In consideration of one dollar to each in hand paid, the receipt whereof each of the parties hereto duly acknowledges, Mr. Hoffmann agrees to give Mr. Shainwald the sole option until August 31st, 1896, to sell his rights to all countries outside of the United States, except as hereafter mentioned, to metal-turning machines of his invention, and any and all improvements, for a term of years, as is customary in the various countries where such patents or rights are in existence or are procurable, and to keep alive all his rights in foreign countries at his expense during term of this option. Mr. McKee agrees to give to Mr. Shainwald the sole option to August 31, 1896, to sell all his rights to the Hoffmann Metal-Turning Machine patents for Great Britain, France, Germany, and Belgium, which patents are not included in those referred to in the first paragraph, same having been sold to Mr. McKee by Mr. Hoffmann. Mr. McKee is also to secure to Mr. Shainwald all improvements for same term of years as Mr. Hoffmann agrees upon in the first paragraph. The purpose of said option and the rights to Mr. Shainwald are to enable him to form a company in New York City which is to acquire all the rights to the Hoffmann Metal-Turning Machines and all improvements. It is agreed between the three parties hereto as follows that the proposed company is to be formed on the below-named basis: A share capital of $300,000, of which one-half ($150,000) is to be paid for patents and the remainder ($150,000) sold at 50c. on the dollar to realize $75,000 in cash; the cash to be used to pay $55,000 for patents, and $20,000 to be left in company's treasury as a capital for expenses of introducing and exploiting the machines in Europe. The $55,000 cash is to be distributed among the three parties hereto as follows: To Mr. Hoffmann $34,000, to Mr. Shainwald $16,000, to Mr. McKee $5,000; the shares as follows: To Mr. Hoffmann, $62,000, to Mr. Shainwald $68,000, to Mr. McKee $20,000. Out of shares received by Mr. Shainwald he is to settle with the Continental Commerce Co. for cancellation of their option from Mr. Hoffmann dated Sep., 1895, and also with Mr. H. Liebes, of London, for surrender of his rights acquired under option of Continental Commerce Co. It is further agreed that the patent for Canada now existing is understood will be reserved for sale to the Hoffmann Machine Co. of New York, and Mr. Hoffmann agrees that said company shall have the balance of this year to decide whether to purchase same at not more than one thousand dollars." Shortly after the execution of the contract the same was modified by a parol agreement to the effect that the proposed corporation should be organized under the statutes of West Virginia, with a capital of 3,000 shares, of the par value of $100, of which 2,250 shares were to be delivered to the defendants in payment of the patents, and 750 shares were to be sold for cash, and of the proceeds, $20,000 was to be held by the corporation as working capital, and the balance to be divided among the parties to the contract in certain proportions,—the defendants to transfer and deliver to the persons purchasing said 750 shares an equal number of shares of stock issued to them as an inducement to purchasers to make such purchases. An extension of the option was obtained from August 28, 1896, to September 22, 1896. During the life of the option, Shainwald drew up a prospectus of the contemplated company. He also procured persons to subscribe for a certain amount of the stock of such corporation, when formed. On the 17th of September, 1896, Shainwald procured to be incorporated under the laws of West Virginia the Hoffmann Foreign Machine Company, with a capital stock of $500,—the articles of incorporation stating that the incorporators "desired the privilege of increasing the said capital by the sale of additional shares, from time to time, to three hundred thousand (300,000) dollars in all." On the 21st of September, 1896, the parties to the contract met for the purpose of carrying out the same, but were unable to do so for the reason that they could not agree upon certain details. The cause of the disagreement is not entirely clear,—the plaintiff contending that the defendants required Shainwald to guaranty the payment of the subscriptions which he had obtained, and, he refusing to do so, the other parties refused to proceed, and the defendants contending that they refused to proceed because Shain-

wald would not permit them to inspect the subscription list, or the charter or minute book of the corporation which he had organized. The defendants, in any event, refused to carry out the terms of the contract, and subsequently Shainwald assigned his interest in the contract to this plaintiff, who thereupon brought this action to recover damages alleged to have been sustained by reason of the defendants' failure to perform on their part, he alleging that, prior to the expiration of the option, "Shainwald performed all the conditions and requirements of said agreement, as so modified, on his part." The defendants interposed separate answers to the complaint, and, among other things, denied that the plaintiff was entitled to recover, for the reason that his assignor had not performed the contract on his part. At the close of the case the defendants moved to dismiss the complaint upon the ground, among others, that if the defendants, at the time alleged, refused to perform, the plaintiff was not entitled to recover, because his assignor had not performed, nor had he the ability to perform at that time. The motion was denied and an exception taken. The plaintiff had a verdict for $16,000, and from the judgment entered thereon, and an order denying a motion for a new trial, defendants have separately appealed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

William H. Stayton, for appellant McKee.
Charles A. Wendell, for appellant Hoffmann.
William D. Hornblower, for respondent.

McLAUGHLIN, J. Plaintiff, having pleaded full performance of the contract, could not recover without establishing that fact. This he did not do, and therefore the motion of the defendants at the close of the trial, to dismiss the complaint on that ground, should have been granted. The allegation of the complaint in this respect is "that prior to the said 22nd day of September, 1896, said Shainwald performed all the conditions and requirements of said agreement as so modified on his part; that said Shainwald caused a corporation to be formed under the laws of the state of West Virginia; that said Shainwald secured purchasers of said seventy-five thousand (75,000) dollars of the stock of such corporation, and thereupon called upon and required the defendants to comply with their part of said agreement and transfer the patents and improvements set forth therein to said corporation and receive the consideration and the stock called for by the said contract and modification thereof as hereinbefore set forth." This allegation was put in issue by the answers of the defendants, and no proof whatever was offered at the trial tending to establish the truth of the same. On the contrary, the evidence is uncontradicted to the effect that Shainwald did not form a corporation with a capital stock of $300,000; nor did he procure purchasers of stock in any corporation which was formed to the amount of $75,000. The contract, in express terms, obligated Shainwald to form a corporation with a capital stock of $300,000, and impliedly obligated him to procure purchasers of such stock to the amount of $75,000. This latter obligation is implied from the fact that the plaintiff's assignor was to receive $16,000 in cash and $68,000 in stock; and the plaintiff alleges it in the complaint, and his assignor testified upon the trial that the agreement obligated him to do this. The plaintiff, therefore, having alleged performance, was bound to establish that

fact, and, failing to do so, no recovery could be had. La Chicotte v. Electric Co., 15 App. Div. 380, 44 N. Y. Supp. 75; Schnaier v. Nathan, 31 App. Div. 225, 52 N. Y. Supp. 812; McEntyre v. Tucker, 36 App. Div. 53, 55 N. Y. Supp. 153; Cox v. Halloran, 64 App. Div. 550, 72 N. Y. Supp. 302. But in this connection it is suggested that the recovery can be upheld upon the theory that Shainwald was excused from full performance by reason of the defendants' refusal to proceed. This cannot be done, for the reason that there are no appropriate allegations in the complaint which would permit a recovery upon that ground. The plaintiff, having predicated his right to recover on the breach of the agreement, was bound to allege and prove performance on the part of his assignor, or an excuse for nonperformance, and, if an excuse were relied upon, then he was bound to allege facts constituting such excuse, and in addition thereto that he was at that time ready, and had the ability, to perform, and would have done so except for the acts of the other parties to the contract. But had the plaintiff alleged facts showing an excuse for the nonperformance based upon the refusal of the defendants to proceed, it would have been unavailing, inasmuch as it appears—and this fact is uncontradicted—that at the time the defendants refused to perform (September 22, 1896) the plaintiff's assignor not only had not performed, but he did not then have the ability to do so. The refusal of the defendants at that time to proceed under the contract did not relieve the plaintiff's assignor from the obligations which he had assumed, nor from proving that at that time he was able, ready, and willing to proceed to carry out the contract on his part. Bigler v. Morgan, 77 N. Y. 312; Lawrence v. Miller, 86 N. Y. 137; Eddy v. Davis, 116 N. Y. 247, 22 N. E. 362. The plaintiff's assignor could not then have performed. He had not formed the corporation as agreed, nor had he procured a purchaser to a single dollar of the stock. The most favorable claim that can be made for him in this respect is that he had formed a corporation with a capital stock of $500, and had obtained subscriptions to the extent of $75,000 to the stock of a corporation when formed. The corporation which he had formed, as already said, only had a capital stock of $500, and it is difficult to see, until something further had been done, how the stock which he claims had been subscribed for could have been delivered, or how the defendants could receive the stock which the agreement provided should be delivered to them as a consideration for the assignment of their patents. But it is suggested that had the defendants acted with Shainwald the capital stock of the corporation formed could have been increased to $300,000. It is true that the terms of the certificate of incorporation provided for such increase, but before that could be done it would have been necessary for the stockholders to have taken some action showing that they had voted upon the subject of such increase; and had Shainwald and the defendant McKee favored such increase, it does not necessarily follow that the increase would have been voted, inasmuch as it appears that they were minority stockholders.

Nor do we think that the subscriptions to the stock could have been enforced if the capital stock of the corporation formed had been

increased to $300,000. These subscriptions were obtained in connection with a prospectus which stated that the purpose of the corporation to be formed was "to acquire all the patents and rights for all countries except the United States and Canada, to metal-turning machines known as the 'Hoffmann machines,' and of which E. G. Hoffmann is the inventor as well as the patentee, as well as all improvements, additions, etc." The subscribers agreed to take stock in a corporation formed for this purpose. The corporation as organized by Shainwald, as appears from the certificate of incorporation, was "to make, contract for the manufacture or purchase of, buy, use, sell, lease, rent, or mortgage all mechanical or other apparatus, machinery, and implements for metal-turning machines, or any other article or articles connected therewith or incident thereto, or any or all of them, and in general to do a manufacturing business." This was a material departure from the agreement entered into by the subscribers, and to which, so far as appears, none of them ever assented. The corporation having been formed without their knowledge, or at least some of them, they, never having ratified the additions to the contemplated business of the corporation, certainly could not be called upon to pay their subscriptions, or take stock in such corporation. Dorris v. Sweeney, 60 N. Y. 463. Nor do we think it satisfactorily appeared in other respects that valid subscriptions to the amount of $75,000 had been secured. Some $17,500 of such stock appears to have been subscribed for, not by parties purporting to have subscribed for it, but by Shainwald, under an alleged authorization to so subscribe. These authorizations, according to the testimony of Shainwald, were by parol, with the exception of one, which is claimed to be by a cablegram, and which cablegram was not introduced in evidence, and as to one of them the alleged subscribers testified that he never signed the list, and never authorized Shainwald to sign for him. In addition to this, all of the subscriptions are conditioned upon the payment of the bonus by the defendants, and how the corporation could enforce the payment of such bonus it is difficult to see. If it could not do so, then it could not enforce the payment of the subscriptions contingent upon the bonus.

Other questions are raised by the appellants, but we deem it unnecessary to consider them.

The judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.