(115 App. Div. 126)

## HECLA IRON WORKS v. HALL et al.

(Supreme Court, Appellate Division, First Department. October 19, 1906.)

1. MECHANICS' LIENS—ACTIONS TO ENFORCE—EVIDENCE ADMISSIBLE UNDER PLEADING.

In an action to enforce a mechanic's lien, where the complaint alleges that the plaintiff duly performed all the conditions of its contract, and the answer counterclaimed for liquidated damages for delay in performance, and the reply set up that plaintiff was obstructed by the fault of defendants, evidence of excuses for nonperformance by plaintiff within the time fixed in its contract was inadmissible.

2. SAME—NOTICE OF LIEN—EXCESSIVE CLAIM.

In an action to foreclose a mechanic's lien, evidence *held* to show that the amount claimed in the notice of lien was willfully and intentionally exaggerated, so that the notice was void, and plaintiff forfeited its right to a lien.

Appeal from Special Term, New York County.

Action by the Hecla Iron Works against Charles Ward Hall and others. From a judgment in favor of plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued before O'BRIEN, P. J., and INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

Alexander D. Andrews (Hector M. Hitchings, of counsel), for appellant Hall & Grant Const. Co.

John Larkin, for appellant Charles Ward Hall.

William N. Dykman (John J. Kuhn, of counsel), for respondent.

CLARKE, J. This is an action to foreclose a mechanic's lien. The defendant Hall owned the Morse building on Nassau street in the city of New York. For the purpose of building it up from an 8-story to a 14-story building he entered into a written contract with the Hall & Grant Construction Company as general contractor for said construction. In that contract were the following provisions:

"Article 5. All contracts with subcontractors shall contain clauses under which they shall be required to furnish the material or labor which they have contracted to furnish within the time called for by said contracts, and in default thereof that the said materials may be purchased in the open market or the work done by parties other than the original subcontractors without additional expense to the owner. All subcontracts for such labor or material as would tend to cause delay in the completion of the building or to delay other subcontractors should said labor or material not be furnished within the time provided for in such subcontracts, and thus cause a delay in the work, shall be drawn as to provide for payment by such subcontractors of liquidated damages in such an amount as to indemnify, and hold harmless the owner from damage by reason of such delay."

"Article 8. Work shall be commenced by the general contractor immediately on the signing of this contract, and the several subcontracts let as soon thereafter as reasonable conduct of the work will permit, and the building shall be entirely and completely finished on the first day of October, 1901. And it is mutually agreed that the general contractor shall pay to the owner, and the owner is to receive as liquidated damages in the event of the noncompletion of the building on the date herein specified, a sum not less in amount than the full schedule rentals of the building, less the rents actually received for the whole period of such delay, after due allowance has been

made for all delay for which the general contractor is not liable by reason of the exemption of and under article 6 hereof."

This contract was made on the 11th day of April, 1901. On the 6th day of May, 1901, the general contractor, Hall & Grant Construction Company, entered into a contract in writing and under seal, with the plaintiff, the Hecla Iron Works, under which the Hecla Iron Works contracted to furnish the structural steel for the additional stories and roof, which was to be paid for at a specified rate per pound. This contract contained the following provisions:

"Article 4. Should the subcontractor at any time during the progress of the work hereunder refuse or neglect to supply a sufficiency of material or skilled workmen to properly advance the work and complete the same, or any part thereof, to the full satisfaction of the general contractor, or owner, or within the time limited for the completion of the work, the general contractor shall be at liberty after three days written notice to the subcontractor, to provide any such labor and materials and to deduct the cost thereof from any money or moneys then due, or thereafter to become due, to the subcontractor under this agreement; and if said general contractor or owner shall certify that such refusal, neglect or failure is sufficient ground for such action, the general contractor shall also be at liberty to terminate the employment of the subcontractor for any or all of said work, etc.

"Article 5. Should the subcontractor be obstructed or delayed in the prosecution of completion of its work by the act, neglect, delay or default of the general contractor, or of any other subcontractor employed on the work by the general contractor, or for any other cause through no fault of the subcontractor, then the time herein fixed for the completion of the work hereunder shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the general contractor within twenty-four hours after the commencement of such delay. The duration of such extension shall be certified to by the general contractor."

"Article 7. Work shall be commenced by the subcontractor immediately on the signing of this contract. The first of the grillage for the basement shall be delivered at the building within one week from the date of this contract, and to continue as rapidly as required. The riveted girders for grillage in basement and those to be set at the eighth floor level shall be delivered at the building within one month, and all of the material within seven weeks after the date of this contract. All material is to be delivered tier by tier as it is to be set in the building. In view of the fact that this contract was awarded to the subcontractor by the general contractor at a considerable advance above the price for which the general contractor could have obtained the material elsewhere, solely on the representation and promises of the subcontractor that it would fully and completely deliver the steel work for the construction of the alterations to the said building No. 140 Nassau street, at or within the time specified herein, the subcontractor has and does hereby agree to purchase locally or in the open market, if at an advanced price without any additional charge, such material as it may not be able to secure from its accustomed source of supply in order to make the said deliveries, and the subcontractor agrees that in the event of any claim for liquidated damages hereunder, the defense of not being able to obtain the material necessary for the construction of the several parts to be supplied shall not be set up as a defense by it. And, in view of the fact of a possible difficulty in arriving at an equitable adjustment of the damage suffered by the general contractor, or by the owner, or both, by the nonfulfillment of the promises of delivery herein made by the subcontractor, it is mutually agreed that the subcontractor is to pay to the general contractor, or owner, and the general contractor or owner is to receive fifty dollars for each calendar day that the completion of the several deliveries herein mentioned is delayed beyond the time specified after due allowance has been made for all delay for which

the subcontractor is not liable by reason of the exemption of and under article 5 hereof. Said sum of fifty dollars per day is estimated to be the liquidated damages suffered by the general contractor, or owner, and not by way of a penalty, and it is hereby agreed by both parties hereto that said fifty dollars per day is a reasonable and just measure for such delay. It is further agreed that the acceptance of any material delivered by the subcontractor later than the time herein specified for such delivery shall not constitute or be construed, as a waiver of the rights of the general contractor hereinbefore set forth."

In the specifications attached to and made a part of the said contract was the following:

"Deliveries: In the award of this contract the question of prompt deliveries is a matter of first importance; failure to deliver within the time specified by the contractor is to be considered a cause for the collection by the general contractor, or by the owner of damages, whether material delivered after the date specified is accepted or not. Any bid made under this specification will be taken as an acceptance on the part of the contractor of this condition."

On the 13th day of May, 1901, the general contractor and the plaintiff company entered into a further contract in writing and under seal, for the furnishing of ornamental ironwork required, for a lump sum of $14,100. This contract also contained similar provisions in article 4 and article 5 to that already quoted and, as to time, the following:

"Article 7. Work shall be commenced by the subcontractor immediately on the signing of this contract, and the stairs and elevator fronts for the seventh floor shall be delivered in less than thirty days from the date of this contract, and the work in the old building entirely completed within sixty days of said date, work to be set floor by floor as fast as the general contractor shall have finished framing. On condition that the structural work for the new portion of the building is finished by the time that the ornamental work for the old portion is in place, the subcontractor shall fully complete all of the work included in this contract within one hundred calendar days from the date hereof."

This contract also contained a similar provision in regard to liquidated damages of $50 a day and the specifications attached to this contract contained the following clause:

"Miscellaneous. The purpose of this contract is to cover completely all the ornamental iron and bronze work in this building. Progress of the work. Work is to be begun immediately, on the signing of this contract. Time: Time of completion is an important item of the contract."

It is apparent that by the foregoing provisions time was made of the essence of each of these contracts. During the progress of the work, a third contract in writing was entered into for a small additional job amounting to $152. None of the time limitations so precisely provided for in the contracts were observed by the plaintiff. The bulk of the structural materials was delivered between the 20th day of June and the 11th day of September; and the whole work was not completed, as required by the contract with the general contractor, on the 1st day of October. The ornamental work appeared to have been finished by the 21st day of December, and the material called for by the extra contract of the grillage under the sheaving beams was delivered on February 3, 1902. That was the last item of work performed and materials furnished. Notwithstanding these provisions of the several contracts and specifications and the failure of compliance therewith in the

matter of time, as pointed out, the complaint alleges that "this plaintiff duly performed all the conditions of said contracts on its part." The answer set up the provisions of the contracts and counterclaimed the liquidated damages claimed for delay. The reply sets up that plaintiff was obstructed and delayed by the neglect, delay, and default of the defendants, as an excuse for nonperformance in time.

Upon this state of the pleadings, the defendant at the commencement of the case, at the close of the plaintiff's case, and at the close of the whole case, moved for a dismissal of the complaint and seasonably and persistently objected to the admission of any and all evidence tending to excuse nonperformance within the time fixed by the contracts upon the ground that the complaint having alleged due performance of the contracts a recovery could only be had secundum allegata. There was no amendment of the complaint asked for or granted and the case was tried out upon the issues presented by the pleadings. In Schnaier v. Nathan, 31 App. Div. 225, 52 N. Y. Supp. 812, Patterson, J., said:

"The judgment in this case must be reversed upon the ground that the recovery was had upon a different cause of action from that set out in the complaint. The evidence establishing the cause of action on which the recovery was had was objected to and admitted under the defendant's exception. The action was brought to foreclose a mechanic's lien. * * * The allegation of the complaint is that the contract was performed, and the right of recovery was based altogether upon performance of that contract. There is nothing contained in the complaint of a waiver of substantial performance nor of any modification of the contract. * * * The defendant had set up a counterclaim for the breach of the contract, and he proved on cross-examination of the plaintiff the omissions and changes in the work. On the redirect examination the plaintiff undertook to show the authority for the changes. The evidence upon which that authority was based was objected to as incompetent and inadmissible under the pleadings. The counsel for the defendant stated that this complaint alleges absolute performance, and as we understand in an action of this kind where performance under the contract is alleged, no defense tending to show excuse for nonperformance is admissible. * * * It has been frequently held that where the objection is properly taken, a recovery such as has been allowed here cannot be sustained. A recovery may be had only secundum allegata et probata. * * * As we said in Elting v. Dayton (Sup.) 17 N. Y. Supp. 849, 'An allegation in a complaint that the terms of a contract have been fully complied with does not authorize proof that it has not been complied with, because of certain facts in respect to which no mention is made in the pleadings. * * * The only issue tendered by a pleading containing this allegation is as to the completion of the contract, not to excuses for nonperformance.' * * * It is true that in an attempt to prove a counterclaim it would be competent for a plaintiff to show anything that would defeat that counterclaim, but that does not permit a plaintiff to recover affirmatively upon the evidence to defeat a counterclaim, as upon a cause of action entirely different from that on which he sued."

McEntyre v. Tucker, 36 App. Div. 53, 55 N. Y. Supp. 153, held:

"Where in an action brought to recover upon a building contract which required the work to be completed at a certain date and imposed a per diem penalty for delay, the complaint alleges complete performance of the contract, evidence tending to show a modification or waiver of this provision of the contract is inadmissible."

McLaughlin, J., said:

"That substantial completion of the work by the first of July was of the essence of the contract is apparent since a penalty was attached for a failure to do so."

In LaChicotte v. Richmond R. & El. Co., 15 App. Div. 384, 44 N. Y. Supp. 77, it was said:

"The complaint alleged performance of the contract, and over the defendant's objection plaintiff was allowed to prove, not performance, but excuses for not performing the work in accordance with the contract. This question has been many times before the court, and the authorities all hold that it is an elementary rule of pleading that when the plaintiff alleges performance of a contract he must prove performance. He cannot excuse nonperformance and recover, because a strict compliance with the obligations of the contract has been either waived or prevented by the defendant."

In Stern v. McKee, 70 App. Div. 142, 75 N. Y. Supp. 157, it was said:

"Plaintiff, having pleaded full performance of the contract, could not recover without establishing that fact. * * * It is suggested that the recovery can be upheld upon the theory that Shainwald was excused from full performance by reason of the defendants' refusal to proceed. This cannot be done for the reason that there are no appropriate allegations in the complaint which would permit a recovery upon that ground."

None of the cases cited by the respondent meet this proposition. What the plaintiff might have shown if it had alleged excuse or waiver of performance is wide of the mark, for it has alleged full performance.

The second reason why this judgment should be reversed, in my opinion, is the fact of the enormous increase in the claim, as filed in the notice of lien, over the bills which had just prior thereto been sent in and the price fixed by the two contracts. The notice of lien claims the amount due to be $24,255.92. It was therein alleged that:

"The labor performed and to be performed and the materials furnished and to be furnished were under and by virtue of an agreement in writing dated May 6, 1901, and a certain other agreement in writing dated May 13, 1901, both made between lienor and said Hall & Grant Construction Company and the materials were structural steel and ornamental wrought and cast iron and bronzework, and the agreed price and value thereof is $42,154.14. The amount unpaid to the lienor for such labor and materials is $24,255.92."

The trial court found that the contract price for the ornamental ironwork was $14,100 and a certain sum of $263.35, making a total for this contract of $14,363.35, and that the total amount under the structural iron contract, in which a price per pound was provided for, was $16,929.41, making a total of $31,292.76. That of this amount, $6,427 had been paid on the ornamental iron, and $10,740.33 on the structural iron; a total of $19,167.35—leaving the amount due on both contracts $12,125.43. That the agreed price and value under the contracts as alleged was $42,154.14 instead of $31,292.76, as found by the court, or an excess of $10,861.38, and the amount unpaid was alleged to be $24,255.-92 instead of as found by the court, $12,125.43, being in excess over the amount found of $12,130.69. The learned trial court has found that:

"The amount claimed in the notice of lien exceeds the amount then due from the Hall & Grant Construction Company to the plaintiff. The overstatement was honestly made in the belief that it was due and could be recovered, and it was made not willfully or intentionally."

It seems to me that this finding is unsupported by the evidence. It appears that from time to time bills had been rendered, checked up by the general contractor, and payments made. That the sum total of these bills, while there was a slight amount in dispute on weight, was about

what the court has found due. That on a claim being made by the general contractor for liquidated damages under the contracts for delay, threatening letters were sent by the plaintiff, and then the notice of lien was filed for upwards of $12,000 more than the total of the bills sent aggregated, and this notice alleged that the amount was due at the agreed prices under the specified written contracts. A claim double the amount found due must have a better explanation than any offered in this record to warrant the finding of the trial court cited supra. It seems to me that the evidence compels the conclusion that the claim was willfully and intentionally exaggerated, and, if so, Aeschlimann v. Presbyterian Hospital, 165 N. Y. 296, 59 N. E. 148, is authority for the rule that plaintiff has thereby forfeited the right to a lien and rendered the notice void and ineffectual. This court said in New Jersey Steel & Iron Company v. Robinson, 85 App. Div. 612, 83 N. Y. Supp. 450:

"While it is true that in that case (referring to the Aeschlimann Case, supra), there were elements of actual and affirmative fraud upon the part of the contractors which find no place in this case and with which the lienors cannot be charged, yet it is evident that they willfully and, therefore, intentionally grossly exaggerated their lien, and thereby worked or might have worked an injury to subsequent lienors and other parties interested in the fund. Such gross exaggeration must be regarded in law as willfully made, as it must have been known to the lienors to be untrue at the time when the statement was made. Thereby there was a violation of the terms of the statute which requires (Laws 1897, p. 518, c. 418, § 9, subd. 7) that the claim shall be truthfully stated, and it is in no way unjust to the claimants to insist upon compliance with the statute in this respect."

For the reasons stated, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.