## BOOTH v. MILLIKEN.

(Supreme Court, Appellate Division, First Department.  July 8, 1908.)

1. VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT TO SELL—ENFORCEMENT AGAINST PURCHASER—UNILATERAL CONTRACT.

   D. agreed in writing to sell defendant 70,000 acres of land, situated in certain counties in Tennessee, for a certain sum, in stated payments. The paper was signed and sealed by both D. and defendant. *Held*, that the alleged contract was purely unilateral, and, as there was no promise or agreement by defendant to purchase or to pay the specified price, no action against him for failure to purchase would lie, notwithstanding defendant took and kept a duplicate copy of the writing.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 89.]

2. SAME—VALIDITY—SUBJECT-MATTER—CERTAINTY.

   A contract for the sale of land, which describes the subject-matter as "70,000 acres of land situate, lying, and being in" four specified counties, is too uncertain to be enforced.

3. SAME—ANTICIPATORY BREACH OF CONTRACT TO PURCHASE—RIGHT TO RECOVER—VENDOR'S LACK OF TITLE—EFFECT.

   The doctrine of anticipatory breach, as the basis for an immediate action for damages against one refusing to go on with a continuous executory contract, is applied with great caution and in only a limited class of cases, and, where an agreement for the purchase of land upon two payments is not performed, an action for damages for complete nonperformance will not lie, after the date for full performance is passed, unless there is a tender of performance by the vendor, or waiver or other act of the purchaser excusing nonperformance, and a mere refusal to go on with the purchase will not relieve the vendor of the obligation of pleading and proving readiness to perform, or his inability to do so because of the purchaser's act; and hence, where the vendor has no title to the property, and has not shown that he could have qualified himself to perform, had the purchaser completed the contract, there can be no recovery.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 945.]

4. SAME—MEASURE OF DAMAGES—PROPERTY NOT BELONGING TO VENDOR.

   The measure of damages for failure to complete a contract for the purchase of land not belonging to the vendor is not the difference between the market value and agreed price, but is the difference between what the

land would cost plaintiff to acquire and the contract price, not exceeding the difference between the fair market value and the contract price.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 955.]

5. APPEAL AND ERROR—DISPOSITION OF CAUSE—REVERSAL—NEW TRIAL.

Where plaintiff sues and recovers on an alleged written contract, but the document imposes no obligation on defendant, and the judgment is reversed on appeal, the complaint will be dismissed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4577.]

Appeal from Trial Term.

Action by Julia M. Booth, administratrix of Arthur C. Booth, against William A. Milliken. From the judgment for plaintiff, defendant appeals. Reversed and dismissed.

See 99 N. Y. Supp. 1135.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

J. W. Osborne, for appellant.
R. Burnham Moffat, for respondent.

SCOTT, J. The plaintiff, as assignee of one Thomas C. Doremus, sues for damages for the nonfulfillment by defendant of what is alleged to be a contract by him to purchase a tract of land in Tennessee. The alleged contract is in writing and bears date October 30, 1902. It reads as follows:

"This memorandum of an agreement this day entered into between Thomas C. Doremus and William A. Milliken witnesseth: That said Thomas C. Doremus agrees to sell and convey, by deed in fee with general warranty, to William A. Milliken seventy thousand (70,000) acres of land situate, lying, and being in the counties of Cumberland, Roane, Reha, and Bledsoe, in the state of Tennessee, for the sum of seven hundred thousand ($700,000) dollars, to be paid as follows: Three hundred and fifty thousand ($350,000) to be paid within 30 days from this date, and three hundred and fifty thousand ($350,000) within 60 days from this date. The said Milliken is to satisfy himself as to the title of said property by such examination as he may desire within the next 30 days."

This paper was signed and sealed by both Doremus and the defendant. At the time it was signed Doremus had no title to the property referred to, and never acquired such title, nor ever, so far as appears by any competent proof, had any contract or agreement with the owners thereof which assured his ability to carry out the above agreement on his part, although there are throughout the case references, more or less vague, to some papers in a bank or other depository which, as it seems to have been assumed, conferred some right upon him to acquire title to the lands upon some undisclosed condition or consideration. It also appears quite clearly that neither Doremus nor defendant understood or expected that defendant would himself become the actual purchaser of the lands. The evident hope and expectation was that the land could be sold to one Dotson and a firm in Washington, and both Doremus and defendant at once proceeded to endeavor to impress Dotson with the desirability of the land. Dotson, however, refused to purchase, and thereupon defendant, within

30 days after the paper had been signed, notified Doremus that he could not go on with the purchase. Thereafter Doremus and the defendant worked· together for about two years in the attempt to sell the land; Doremus from time to time borrowing or attempting to borrow small sums of money from defendant, apparently without a suggestion of any claim that the latter was in any way indebted to said Doremus. Early in 1904 a possible purchaser appears to have been discovered, and on February 1st of that year Doremus gave defendant a written promise that, if he should succeed in selling the property to parties with whom defendant might bring him in contact, he would pay to defendant 10 per cent. of the gross amount received and accepted on such sale. In March, 1904, Doremus and defendant quarreled because defendant would not indorse a note for Doremus, and on May 16, 1906, Doremus assigned to plaintiff's intestate the claim which this action is brought to enforce, and upon which judgment has been recovered.

There are several very substantial reasons why this judgment cannot stand:

First. The defendant did not agree to purchase the land, or to pay to Doremus any sum whatever. The so-called contract is purely unilateral; the only agreement in it being Doremus' covenant to sell upon being paid a given sum at stated times. There is no promise or agreement on defendant's part to purchase, or to pay the specified price. No action can therefore be maintained against him for his failure to do that which he never agreed to do. Dorsey v. Packwood, 12 How. (U. S.) 126, 13 L. Ed. 921; L'Amoreux v. Gould, 7 N. Y. 349, 57 Am. Dec. 524; Quick v. Wheeler, 78 N. Y. 300; Barrow Steamship Co. v. Mex. Cent. R. R. Co., 134 N. Y. 15, 31 N. E. 261, 17 L. R. A. 359; Chicago & G. E. R. R. Co. v. Dane, 43 N. Y. 240; Rafolovitz v. Am. Tobacco Co., 73 Hun, 87, 25 N. Y. Supp. 1036; Commercial Wood & Cement Co. v. Northampton Portland Cement Co., 115 App. Div. 388, 100 N. Y. Supp. 960. The document will be searched in vain for any assumption by the defendant of the obligation to take the land or pay the price. It amounts to nothing more than an offer or option on the part of Doremus to sell the land to defendant, if the latter will pay $350,000 in 30 days and a like sum in 60 days. By its terms it imposes no obligation of acceptance upon the promisee, and the fact that the defendant also signed it, and took and kept a duplicate copy, does not justify an implication of a promise on his part to accept the option. Churchward v. Coleman, L. R. 1 Q. B. 173; Justice v. Lang, 52 N. Y. 323, 329. This objection is sufficiently raised by the denials and qualified admissions in the answer.

Second. The document, if it is to be treated and considered as a contract for the sale and purchase of land, is void both in this state, where it was made, and in Tennessee, where the land lay, because it does not specifically or with sufficient certainty describe and identify the land proposed to be conveyed. Johnson v. Kellog, 7 Heisk. (Tenn.) 262; Dobson v. Litton, 5 Cold. (Tenn.) 616; Cooley v. Lobdell, 153 N. Y. 596, 47 N. E. 783; Ward v. Hasbrouck, 169 N. Y. 407, 62

N. E. 434. All that is provided for is the sale of 70,000 acres of land in certain counties in Tennessee. The land is not identified in any way—not even by a declaration as to its present ownership, or by reference to an earlier deed, or by the enumeration (sought to be supplied by the complaint) of the particular grants of which the tract is composed. No court could make a decree of specific performance against Doremus, and his promise to convey would be sufficiently complied with by the conveyance of any tract or tracts of land in the counties named, comprising 70,000 acres. The blue print read in evidence, even if admissible to help out the option, of which I have great doubt (Wright v. Weeks, 25 N. Y. 153), adds little or nothing to its definiteness. It contains neither courses, boundaries, nor distances.

Third. Neither the complaint nor the proofs showed that Doremus was ever in a position to sue for damages. It is conceded that he never had a title to the land, so that he could make a tender of performance, or that he did in fact make such a tender. The complaint is framed upon the theory that, by refusing to go on with the purchase before the day fixed for the payment of the first installment of the price, the defendant committed what is termed an "anticipatory breach" of the contract, which entitled Doremus to sue at once, and that the right of action was transferred by assignment to plaintiff's intestate. The doctrine of anticipatory breach as a basis for an immediate action for damages against him who repudiates or refuses to go on with a continuous executory contract is one which, when applied at all, is applied with great caution and only in a very limited class of cases. Kelly v. Security Mutual Life Ins. Co., 186 N. Y. 16, 78 N. E. 584. It has never, so far as we can ascertain, been applied in a case like the present. It may be that defendant's declaration that he could not or would not go on with the purchase would have justified Doremus in rescinding or withdrawing his offer to sell; but it afforded no ground for an immediate action for damages for nonperformance. We are referred by the respondent to a number of cases of undoubted authority to show that the agreement to pay $350,000 in 30 days, assuming that there was such an agreement, was an independent agreement, and that Doremus might have sued at once for the first installment, without tendering performance or showing his readiness to perform. The difficulty is that this is not such an action. It is not an action for the first installment of the purchase price, but an action for damages for complete nonperformance on defendant's part, and it was not begun until long after the date for full performance had passed. Having waited until after the date fixed for full performance, payment and conveyance have become concurrent obligations, and to maintain an action against the vendee for nonperformance the plaintiff must allege and show tender of performance on his part, or a waiver of performance on the part of the vendee, or some act by the vendee that excused nonperformance by the vendor. Eddy v. Davis, 116 N. Y. 247, 22 N. E. 362; Bigler v. Morgan, 77 N. Y. 312; Stern v. McKee, 70 App. Div. 142, 75 N. Y. Supp. 157. Defendant's refusal to go on with the purchase doubtless rendered it unnecessary for Doremus to

make an actual tender; but it did not obviate the necessity to allege and prove his readiness to perform, or to allege and prove that by reason of some act of defendant he was unable to perform, which but for that act he would have been able to do. He has not brought himself in any sense within the rule. It is conceded that he could not perform or tender performance, because he had no title. It is suggested, though neither alleged nor proven, that he could have obtained title, and thus qualified himself to perform, if defendant had completed his contract. But mere suggestion is not enough. The law requires both allegation and proof. As was said in Stern v. McKee, supra:

"It is suggested that the recovery can be upheld upon the theory that Shainwald was excused from full performance by reason of the defendant's refusal to proceed. This cannot be done, for the reason that there was no appropriate allegation in the complaint which would permit a recovery upon that ground. The plaintiff, having predicated his right to recover on the breach of the agreement, is bound to allege and prove performance on the part of his assignor, or an excuse for nonperformance; and, if any excuse were relied upon, then he was bound to allege facts constituting such excuse, and in addition thereto that he was at that time ready and had the ability to perform, and would have done so, except for the acts of the parties to the contract."

Fourth. The court adopted and applied the wrong measure of damages in permitting plaintiff to prove the market value of the land, and in basing the damages on the difference between the market value and the contract price. This is the proper and usual rule where the vendor actually owns the land, but it is wholly inapplicable where he has to purchase it himself in order to fulfill his contract. In such case his loss cannot exceed the difference between what it would cost him to acquire the land and what the defendant promised to pay. It may be that, if his contract with the owner was at a price far below the market price, he could not recover the whole difference; but he certainly cannot recover more. If his contract with the owner was at a price below the market price, he would not be damaged to the extent of the difference between those prices by the defendant's refusal to complete the purchase, because that difference would be represented by the land, which he presumably could sell at the market price. The true measure of damage in a case like the present, assuming an obligation on the part of defendant to purchase and ability on the part of plaintiff to put himself in a position to convey, would be the value of his bargain, and that would be the difference between what it would cost plaintiff to acquire the property and the contract price, not exceeding, however, the difference between the fair market value and the contract price.

For the foregoing reasons, the judgment and order denying the motion for a new trial must be reversed; and, since the document relied upon imposed no obligation upon the defendant, the complaint must be dismissed, with costs in this court and in the court below. All concur.