(173 App. Div. 147)

## FISCHER v. SCHRAM et al.

(Supreme Court, Appellate Division, First Department. June 2, 1916.)

1. WORK AND LABOR ⬾9—EFFECT OF EXPRESS CONTRACT.

Recovery cannot be had for reasonable value of services, where a written contract, fixing the price of such services, has not been modified or rescinded.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 23, 24; Dec. Dig. ⬾9.]

2. CONTRACTS ⬾245(2)—MERGER OF PRIOR ORAL AGREEMENTS.

Oral agreements or directions prior to the execution of a written contract are merged therein, and cannot operate to vary the terms of such written contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1130; Dec. Dig. ⬾245(2).]

3. REFORMATION OF INSTRUMENTS ⬾20—MISTAKE OR FRAUD.

Where by reason of mutual mistake or fraud of one party and mistake of the other, the contract does not state the true agreement, reformation may be had.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 79, 80; Dec. Dig. ⬾20.]

4. CONTRACTS ⬾247—MODIFICATION—EVIDENCE—SUFFICIENCY.

Evidence examined, and *held* insufficient to sustain a finding that plaintiff's contract for services as architect had been modified to permit him to recover the reasonable value of such services.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1139, 1787; Dec. Dig. ⬾247.]

5. PRINCIPAL AND AGENT ⬾43(1)—AUTHORITY—TERMINATION BY DEATH.

The authority of an agent to bind his principal by changing or modifying a contract ceases upon the death of the principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 67, 69, 70; Dec. Dig. ⬾43(1).]

6. EXECUTORS AND ADMINISTRATORS ⬾156—ACTIONS AS AFFECTING VESTED RIGHTS AGAINST ESTATE.

Actions of executors cannot affect the right of a party to a contract with decedent against the latter's estate, since their authority extends only to the payment of obligations legally incurred by their testator.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. ⬾156.]

7. CONTRACTS ⬾319(1)—ACTIONS—ISSUES—VARIANCE.

In action on contract, where the plaintiff, an architect, rests his right to compensation upon complete performance and the proof discloses nonperformance of a substantial part, he cannot recover compensation which, by the contract, was payable only on the completion of the work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1493–1495; Dec. Dig. ⬾319(1).]

Appeal from Trial Term, New York County.

Action by Frederick W. Fischer against Louis B. Schram and others, as executors. From a judgment for plaintiff, on the verdict, an order denying a new trial, and an order granting a certificate of costs, defendants appeal. Reversed and dismissed.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Henry H. Man, of New York City, for appellants.
Abraham Lipton, of New York City, for respondent.

McLAUGHLIN, J.  On the 17th of June, 1911, Nathan Herrmann, the defendant's testator, offered to build for and donate to the Jewish Protectory & Aid Society, a charitable organization, a building for use as a trade school.  His offer was formally accepted on July 21, 1911.  Plaintiff is an architect, who, prior to the making of the offer by Herrmann, had, at his request, prepared preliminary sketches for the building.  After the acceptance of the offer Herrmann, on the 25th of July, 1911, entered into two written agreements with the plaintiff.  The first provided for the erection by the plaintiff as contractor of a frame and stucco building in conformity with the preliminary sketches at a cost of not to exceed $18,800.  The second provided that Herrman would pay the plaintiff 6 per cent. of $18,800, viz., $1,128 for—

"all architectural services required or desirable for the planning, erection and supervision of Nathan Herrmann Agricultural and Trade School building, * * * the services to consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, and of the general direction and supervision of the work. * * * *"

The complaint alleges, in substance, that subsequent to the making of these contracts the plans and specifications referred to therein were modified with the knowledge and consent of Dr. Charles Schram, Herrmann's agent, which necessitated the drafting of new plans and specifications, with the result that the cost of the building was increased from $18,800 to $48,800, and that thereby the agreed and reasonable value of plaintiff's services as architect was increased to 6 per cent. of the latter sum, viz., $2,928, of which only $828 has been paid.  Judgment was demanded for the amount remaining due.  The answer denied that there was anything due the plaintiff; that the agreements between him and defendants' testator were ever modified or superseded, and set up a counterclaim for $30,000 damages alleged to have been caused by the plaintiff's act in increasing the cost of the building from $18,800 to $48,800.  The jury rendered a verdict in favor of the plaintiff for the amount claimed by him and against the defendants on their counterclaim.  The defendants appeal from a judgment entered upon the verdict (the counterclaim not being mentioned or referred to therein) and an order denying a motion for a new trial, as well as an order granting plaintiff a certificate for costs.

The fact is undisputed that plaintiff did prepare plans and specifications for a much more elaborate building than that contemplated by the preliminary sketches, by reason of which the construction of the building cost $48,800 instead of $18,800, as originally planned.  The main points of difference were that the plans and specifications provided for a basement under the entire building instead of under only a part, for the rearrangement of rooms, the addition of a balcony, and for the use of brick and stucco instead of frame and stucco.

[1]  The question presented upon the appeal is whether or not, by

reason of the changes made by the plaintiff, Herrmann became obligated to pay him a sum greater than that fixed by the written contract of employment. There was no proof that any other or greater compensation was agreed upon. The recovery is predicated upon plaintiff's testimony to the effect that the reasonable value of his services was 6 per cent. of the total cost of the building. This recovery cannot be sustained unless evidence was adduced at the trial sufficient to sustain a finding that the written agreement, by which plaintiff was to · be paid $1,128, was modified so as to enable him to recover 6 per cent. upon the total cost of the building. No evidence was offered that Herrmann personally knew of or assented to any change in the plans for the construction of the building, or to the modification of either of the contracts of July 25, 1911. It may well be doubted whether plaintiff proved that Dr. Schram's authority as agent was sufficient to permit him to consent to a modification or abandonment of those contracts. But even if that fact be assumed, I am unable to discover any evidence in the record, either that the contracts of July 25, 1911, were modified, or that they were in fact abandoned and new contracts made. Substantially the only evidence bearing upon this question is the disputed testimony of the plaintiff himself, to the effect that at a meeting of the board of directors of the Protectory, at which he and Dr. Schram were present, the changes above· referred to were suggested by the directors, and that Dr. Schram then said to the plaintiff:

"You have heard what the committee desires; draw plans in accordance with those instructions; draw the building to be of brick; draw the building with the entire basement, and provide a balcony and place the assembly room on the ground floor."

[2, 3] Any effect, however, which might be claimed from this testimony is completely destroyed when it was conclusively established that the meeting of the directors at which these changes were alleged to have been ordered by Dr. Schram, and the alleged statements made by him, was held on July 20, 1911, five days before the contracts between Herrmann and the plaintiff were executed. It needs no argument to demonstrate the absurdity of the claim that these written instruments, fixing the rights and obligations of the parties to them, were modified by a conversation which took place prior to their execution. The written contracts were made for the sole purpose of fixing the rights of the parties, and any oral agreement theretofore had necessarily was merged in them. A contract cannot be changed or modified before it is made. When made, if it does not set forth the agreement, by reason of a mutual mistake, or a mistake of one of the parties and the fraud of the other, then a reformation may be had. But so long as it remains in the form in which it was executed, the rights and obligations of the parties must be determined by it.

[4] The plaintiff, doubtless recognizing the force of this rule, asserts that Dr. Schram knew of and assented to the changes which were made in the plans and specifications and the construction of the building in accordance with them, and by reason of that fact Herrmann became bound, at least by implication, to pay the reasonable value of the services rendered, which was 6 per cent. of the cost of the build-

ing. It may be conceded that Dr. Schram knew that the preliminary
sketches had been changed and the building was being constructed
upon other plans, but it does not follow that he knew, at least until
after Herrmann's death, that either the cost of the building or plain-
tiff's compensation would thereby be increased. The written contract
as to the construction of the building provided that:

"The preliminary drawings may be changed or altered by the architect if
deemed advisable in order to have them properly work out, but for that pur-
pose only."

Indeed, the acts of the plaintiff himself could hardly have done other-
wise than have convinced Dr. Schram that the changes would not
increase either the cost of the building or plaintiff's compensation.
Thus, on September 27, 1911, he sent a letter to Dr. Schram, advising
him that an application had been made to the state board of charities
to approve the plans and specifications. In this letter he said:

"I inclose a copy of original application, wherein you will notice at the bot-
tom that I mentioned the estimated cost $30,000.00; this I did only because
this amount had been published before, and has no bearing on the actual cost.
* * * The problem was difficult to get a brick building for the price of a
frame building, but I desired to do something extra to aid in the good cause
Mr. Herrmann had in mind."

Not only this, but during the progress of the work, between No-
vember 17, 1911, and June 13, 1913, he issued to himself as contractor
15 certificates calling for payments under the building contract. These
certificates are on printed forms, filled out by plaintiff himself. Each
of the first four reads in part as follows: "Contract price $18,800.
00. Extra work none. Deduction none. Total, $18,800." The re-
maining eleven are in the same form, except that instead of the
word "none," after "Extra work" and "Deduction," appear either
dashes or blank spaces. In each of these certificates the balance is
computed as the difference between $18,800 and the amount of the
prior payments.

But even of more significance than these certificates are the two
which plaintiff issued to himself as architect, and in which he certified
that he was entitled to payments under his written agreement of em-
ployment. This agreement, as before stated, specified that plaintiff's
compensation was to be $1,128, of which $225 was payable upon the
completion of the preliminary studies and $450 upon completion of the
specifications and general working drawings, exclusive of details.
These sums were paid to plaintiff on September 9, 1911. The agree-
ment also provided that an additional $153 should be paid upon comple-
tion of large scale and full-size detail drawings. On May 24, 1912,
plaintiff certified that this payment was due. The certificate states the
contract price as $1,128; the balance to be paid as $300, and mentions
no claim for extra compensation. According to plaintiff's testimony,
he knew long before the second certificate was issued to him that the
building would cost largely in excess of $18,800. The conclusion,
therefore, is irresistible that at that time he did not consider that his
written contract of employment had been modified in any way by the
changes in the plans and the increased cost of the building. His every

act down to the time of Herrmann's death is inconsistent with his present claim. It clearly shows that up to that time he did not expect compensation other than that specified in the written agreement.

[5, 6] Herrmann died on August 23, 1912. At that time plaintiff as contractor had called for and received payments aggregating only $2,959.19 under the building contract. Of course whatever authority Dr. Schram had as Herrmann's agent ceased upon the latter's death, and nothing subsequently done by him could bind Herrmann's estate, nor could the acts of Herrmann's executors affect plaintiff's rights against Herrmann's estate. Chisolm v. Toplitz, 82 App. Div. 346, 82 N. Y. Supp. 1081, affirmed on opinion below 178 N. Y. 599, 70 N. E. 1096. The powers of the executors were limited. They could only discharge obligations legally incurred by their testator. This they did, making payments to the plaintiff on his certificates up to June 13, 1913, at which time he had received on the building contract substantially the entire contract price, $18,784.96. Thereafter they refused to make further payments or to complete the building, and on December 12, 1913, the Protectory completed the building at a cost of $30,000, under the direction of its own superintendent.

[7] Plaintiff did not supervise the work done under the contract made by the Protectory, or have anything to do with it; in fact, he was ordered by the Protectory to keep away from the building. As already indicated, plaintiff had been paid, prior to Herrmann's death, $828 out of $1,128, the price fixed for his services by the contract of employment. The balance of $300 was payable "upon completion of the building," and was apparently intended to cover the general direction and supervision of the work, which was required of plaintiff by his contract. As he concededly did not perform a substantial portion of the work of supervision, and as he stands squarely upon a plea of complete performance, he is not entitled to recover such balance in this action. Hocla Iron Works v. Hall, 115 App. Div. 126, 100 N. Y. Supp. 696, Stern v. McKee, 70 App. Div. 142, 75 N. Y. Supp. 157; La Chicotte v. Richmond R. & E. Co., 15 App. Div. 380, 44 N. Y. Supp. 75.

Proper motions were made to dismiss the complaint at the end of plaintiff's case, and renewed at the close of the evidence. The motions were denied and exceptions taken.

If the foregoing views be correct, then it follows that the judgment and orders appealed from must be reversed, with costs to the appellants, and the complaint dismissed, with costs. All concur.